The Chancellor.
This is a bill against the defendants, as executors and devisees of Jacob Mark, deceased, for an account of the estate of the testator, and charging the estate with loans to Mark & Speyer, and responsibilities incurred for them.
The bill is a substitute for the action of assumpsit at law, upon the promise to indemnify, arising from the responsibilities assumed by the plaintiff as surety for M. &y S., between 1796 and 1799. The parties have agreed to consider the suit as properly cognizable here, though it would seem to be a case in which the remedy (if any) was full and perfect at law.
The defendants object to the demand:
1. By reason of the securities taken by the plaintiff, or executed on his account, and accepted by him.
2. The discharge of M. under the bankrupt act.
3. The statute of limitation and the lapse of time.
4. That the loans made prior to the bankruptcy were barred, and the plaintiff has no right to apply moneys, subsequently received, to those loans.
*279 1. The sealed note for 50,000 dollars, was executed and delivered to the plaintiff, and the deposit of it in the hands of JY. I. R., was his own act. He was under no obligation to do it $ and he admits that JY. I. R. became his trustee. He could have compelled a redelivery of the note and warrant, and JY. I. R. would have been responsible for all the damages of the wrongful intermediate detention. As that note has been since delivered to the plaintiff, and is now under his control, why has he not sued at law upon that specialty, instead of resorting here upon the parol or implied promise, arising out of his engagements ? Mark did withhold his consent to have the note delivered up to the plaintiff, but the consent of M. was not requisite, and his refusal was immaterial. I do not understand, that JY. I. R. was a joint trustee of M. and the plaintiff; for, though the deposit was made at the request of J\I., it was still a gratuitous' act of the plaintiff, and entirely his own disposition of his own property. The note and warrant were absolutely at his disposal, and .1 think we are entitled to consider the effect of that fact upon the case.
The question is, whether the plaintiff could look beyond this specialty, and resort to the original responsibility of M. S. When the note was taken, JVÍ. fy S. had dissolved partnership, and M. had taken the property, and undertaken to pay the debts; and the plaintiff, undoubtedly, looked to M., and to him only, for security and payment.
Where a creditor takes a specialty, or a bond and warrant of attorney, as absolute security for moneys lent, he cannot, after-wards, resort to the original responsibility, or implied assumpsit.
The case of Toussaint v. Martinnant, (2 Term Rep. 100.) is very analogous. The plaintiff there was surety for the defendant in several bonds, payable by installments, and the defendant gave him, when he became surety, a counter bond and warrant of attorney, for a specific sum, (£1500,) payable before the other bonds; and this judgment bond was given to secure the plaintiff the payment of that sum, for which he had become surety for the defendant. The plaintiff immediately entered up judgment *280 on his bond, and took out execution, and the defendant, afterwards, became bankrupt; and the plaintiff, subsequent to the defendant’s discharge, had to pay part of the bonds for which he was surety, and the instalments of which became due after the bankruptcy, and none of which were payable before. The K. B. held, that where a surety took a bond, and did not rely upon the promise which the law would raise, he had chosen his remedy, and his only security was his bond, and he could not resort to an action of assumpsit. This express security did away the necessity of a promise in law, and the law will raise none.
If this case be law, then the plaintiff must look to his securities, and be has no right to resort to the promise in law, or to the loose verbal promises of M., at the time, to give security, and to indemnify. Those verbal promises were not of more certain import, nor of greater force, than the implied promise in law, arising from the very nature of the responsibility.
This note and warrant cannot be considered as waived, and given up to M., by any act of the parties. There was an invincible reluctance in M., to have judgment entered up on this note, and JY. I. R. became, in this respect, subservient to the wishes of M., and did not act the part of a faithful trustee for the plaintiff. But nothing was done by the plaintiff, except that he continued to press for other security ; and when the trust deed and the bond to Townsend & Jones, were given, he was not satisfied with them, and he procured an order upon Ferrers. The sealed note was then suffered to lay passive in the hands of JY. I. R., and M. certainly considered himself as no longer interested in it, for he was declared a bankrupt, and discharged; and it does not appear that the plaintiff, after the order on Ferrers, took any further steps in relation to his own indemnity. He did not interfere, until 1820, with the trust in the hands of T. J., nor did he renew his application to JY. I. R. for the sealed note. He seems to have remained quiet and *281 passive for many years, without any express assent to or dissent from either of these securities, placed for his benefit In the hands of T. and in the hands of JV. J. R. It is probable that if he had applied to the latter in the summer of 1800., or at any time afterwards, the note and warrant would have been delivered up to him without difficulty, for the withholding of them could not, in the view of JV. L R.¡ have been of any benefit or convenience to Mark.
2. This note for 50,000 dollars, which the plaintiff held as security and indemnity, and which was payable in February, 1800, was a legal debt, which might have been proved under the commission j and the discharge of M. under the bankruptcy act, constituted a bar to any of these demands founded on Ms being surety for M. & S., and which this note was intended to cover.
A bond or specialty given as absolute security, is provable under a commission of bankruptcy.
The case of Toussaint v. Martinnant. already cited, is an authority to this point. At law, say the judges in that case, the penalty of the bond became a legal debt, and as soon as it was forfeited, the obligee became a creditor of the bankrupt, and might have proved his debt under the commission: and if he had recovered on the bond, and had not afterwards been damnified as surety, equity would havc compelled Mm to refund.
' The case before me is a stronger one than that I have mentioned, for there the debt, for which the plaintiff was surety, was not due at the time of the bankruptcy • bug here all the notes which the plaintiff had indorsed, and all the bonds in which lie was surety, had become payable when the sealed note in question was given.
The case of Martin v. Court, (2 Term Rep. 640.) is also an authority in favour of the right of the plaintiff to have exhibited and proved his note under the commission. The plaintiff in that case was surety in a bond, payable om the 5th of July, and he took a counter-bond by way of indemnity, payable om the day preceding. The defendant *282 became bankrupt before either bond was payable, and the plaintiff was held to be barred from his remedy upon the bond by the certificate, because his debt might have been proved under the commission, as it was an absolute bond, and the plaintiff there intended to have the money in his own hands before hé was called on as surety. So, again, in Hodgson v. Bell, (7 Term Rep. 97.) A. was a surety for B., in two bonds, and after one of the bonds was forfeited and not the other, B. gave a counter-bond to the plaintiff, conditioned to pay those two bonds, and to indemnify the plaintiff against them. The last bond was not paid, and it was held that the bond to A. was forfeited before he was called on to pay, and that A. might prove the bond under the commission of bankruptcy, sued out after all the bonds were payable, and before payment. The Court said, that where the debt accrues subsequent to bankruptcy, it cannot be proved under the commission; but where there was a legal debt prior to the bankruptcy, the creditor may come in under the commission. In that case, the bond was forfeited before the bankruptcy, and part of the condition broken, because one of the bonds, for which this was given as an indemnity, was forfeited subsequent to the giving ' of the security bond. Lord Kenyon referred to the doctrine of Lord Hardwiche, in ex parte Winchester and ex parte Groome, (1 Atk. 116.) that if a bond be forfeited at law, before the bankruptcy, though in equity the money is not then payable, the Court will avail itself of the debt at law, to protect the party who is in conscience entitled.
I cannot see why these decisions are not applicable and decisive, to show that the plaintiff might have proved his note under the commission. It was a debt absolute at law, and payable; and if the plaintiff had not then actually advanced the money for which he stood fixed and charged as surety, he was absolutely bound, and a default had ensued, and he was liable to suits upon his endorsements and obligations. He was entitled to prove that note as a debt', as much as *283 ¿le plaintiffs were entitled to prove the legal debt under their bonds in either of the three cases which have been mentioned. He had also a still more' indisputable right, for the note was given by way of security for advances actually then made, as well as to indemnify against the notes and bonds on which he stood as surety for M. I have said, that the plaintiff might have compelled his trustee, JY> J. R., with whom the note was deposited, to have produced it. This Court would have required the trustee to have had the note forthcoming before the commissioners in bankruptcy, for the benefit of the plaintiff, or to have delivered it to the plaintiff, or deposited it in Court for his use. There can be no doubt of such a jurisdiction | and I see no colour of reason, from any of the facts in the case, for any doubt as to the propriety of the exercise, and of the actual exercise of the jurisdiction of the Court, if it had been called for.
3. If this note for 50,000 dollars is to be placed out of view, in consequence of the arrangement which took place at the time in respect to it; the next question is, whether the plaintiff might not have proved before the commis- . * . sioners, the judgment given by M. to 1. <y ./., m trust for the plaintiff, to the extent of all bis advances and responsibilities.
.A judgment debtor,intrust £°r curity for ad~ vanees and responsibiiities, provable under a ““misSion of bankruptcy,
It was a great mistake, said Lord Redesdale, in the case of Murphy, a Bankrupt, (1 Sch. & Lef. 44.) to suppose, that a debt being provable depends on whether it is a legal debt. It depends on whether it be a debt in law or in equity; for, sitting in cases of bankruptcy, the Lord Chancellor decides on equitable as well as legal debts.
All the cases agree, that a mere contingent debt is not provable under the commission ; but if there be a legal debt subsisting before the bankruptcy, though liable to be defeated afterwards upon a contingency, it may be proved under the commission. This was so ruled by the K. B. in Staines v. Planck, (8 Term Rep. 386.) Now, here was *284 a legal debt subsisting, in the shape of the judgment which stood in the names of T. If J., but which actually belonged to the plaintiff, to the extent of all his demands. In the view of a Court of equity, and in the view of the Lord Chancellor sitting in bankruptcy, it Was a legal subsisting debt, of which the plaintiff was a beneficial owner by a title not to be denied or resisted, and the plaintiff, according to the view of the proper tribunal in the case, would have been entitled to prove, as a debt, before the commissioners, the judgment standing in the names of T. Of J., equally as if it stood in bis own name; and, consequently, all the cases which have been cited apply to this judgment as well as to the sealed note. Had this judgment bond been made payable in the event that the plaintiff should have paid the notes and bonds on which he stood as surety, or either of them, then it would have been a debt payable on a contingency which did not happen until after the bankruptcy, and the case would have fallen precisely within the decision in Staines v. Planck. But it was not so ; and the bond and judgment thereon were absolute, and the plaintiff) under them, would have been entitled, before he paid as surety, to have required his trustees to have collected under the judgment to the extent of his absolute responsibility as surety. The civil law, as was shown in Campbell v. Macomb, (4 Johns. Ch. Rep. 534.) allowed the surety, after the debt was due and payable, though before payment, to sue for his indemnity.
The judgment in this case was a legal debt, and the plaintiff was the equitable owner, to the extent of all his advances and responsibilities for M. He was entitled to all the benefit of that judgment, standing in trust for him, precisely as if it stood in his own name, and a Court of equity would never permit any distinction to be made in such a case, to his prejudice.
Here, then, under this judgment, if not under the prior sote, the plaintiff had a legal, subsisting, absolute debt, to *285 the extent of all his claims, and created on purpose to cover those claims, and which might have been proved under the commission ; and the bankrupt’s certificate is, consequently, a bar to the whole of the demand under this MU.
The bankrupt act of the United States, of April, 1800, was a consolidation of the previous provisions m the M<nglish statutes of bankruptcy ; and the English decisions on their statutes prior to that date, properly apply as rules of construction to this act of Congress.
The bankrupt s. of April, thTpro" ^°^of s*e tutes of bank-English decisions are, piicable here, struction of that act“
By the act, s. 18. the property of the bankrupt is assigned in trust for the use of all the creditors “ who should come in and prove their debts under the commission •” and by the 34th section, the bankrupt was to be discharged from all debts due, or owing, at the time he became a bankrupt, and all which were, or might have been proved under the commission.” By the 39th section, creditors who had “ given credit to, or taken securities payable at a future day, from persons who should become bankrupts, and not due at the time of the bankruptcy, might prove their debts and contracts as if they were payable presentlyand “ the obligee of any bottomry or respondentia bond, and the assured in any policy of insurance, might claim, and after the contingency of loss, prove the debt thereon, in like manner as if the same had happened before the commission, and the bankrupt shall be discharged from such securities, as if such money had been due and payable before the bankruptcy.”
These provisions are substantially the same with those in the English statutes of 7 G. I. c. 31. s. 2. 5 G. II. c. 30. s. 7. 19 G. II. c. 32. s. 2.; and though the words of our statute, “ and all debts which were, or might have been proved under the commission,” are not in the English statutes, they do not extend the power of proving debts, but leave the provision no broader than it stood under these English statutes, for no debts could be proved but *286 what were due or owing, except the debts specially provided for in the 39th section. As Mr. J. Butter said, in Bamford v. Burrell, (2 Bos. & Pull. 1.) the creditor must, in every case, swear, that the bankrupt was indebted at the time of suing out the commission; and debts provable under the commission, and debts to be discharged by the certificate, were convertible terms. Debts not due at the time of the bankruptcy, except in the cases specially provided for by the statute, are not affected by the commission.
In case of a bond or judgment for indemnity merely, or where a party stands merely as bail Or surety, there is no debt provable under a commission of bankruptcy, until the party is actually damnified by payment.
If'these securities taken by the plaintiff were to be placed out of question, we should then have had, so far as concerns the bonds and notes, the common case of a surety liable to pay before bankruptcy, but not actually paying until after ; and it is very clear, that in such a case the certificate of the bankrupt would be no bar, because the debt to the surety accrues only upon payment, and before that time, it is contingent whether the debt will ever accrue, and it is not a debt due and provable until payment. The case of Goddard v. Vanderheyden (3 Wils. 262. 2 Black. Rep. 794. 2 Bos. & Putt. 8. note, S. C.) is a leading one, and a great authority on this point. The plaintiff, in that case, had a judgment against him on a bail bond, as bail for the defendant, and afterwards the defendant was declared a bankrupt, and after that time, and before he obtained bis certificate of discharge, the plaintiff paid the judgment debt. The certificate was no bar to a special action on the case for not indemnifying the plaintiff according to promise, because the plaintiff could not swear to a debt due and owing to him before he actually paid the money. The cases of Young v. Hockley, (3 Wils. 346.) Taylor v. Mills and Magnall, (Cowp. 525.) Paul v. Jones, (1 Term Rep. 599.) Smith v. Gale, (7 Term Rep. 364.) Frost v. Carter, (1 Johns. Cas. 73.) Buel v. Gordon, (6 Johns. Rep. 126.) Lansing v. Prendegast, (9 Johns. Rep. 127.) and Mechanics & Farmers’ Bank v. Capron, (15 Johns. Rep. 467.) are all to the same point.
*287 If the judgment had been taken merely by way of indemnity, and that had been the condition of the bond upon which it was entered, then the plaintiff, or the trustees for him, could not have sworn to any debt due and owing from M., until the plain tiff had been damnified by payment. But the note, and the bond, and the judgment thereon, were all debts for specific sums due and owing, and M. could only have been relieved in equity upon the equitable condition of paying the bonds and notes on which the plaintiff was fixed as his surety. In the case of annuity bonds, if the penalty of the bond for securing the annuity be forfeited before the bankruptcy, the value of the annuity, though contingent, may be proved under the commission, for the redemption of the forfeiture can only be admitted, and the forfeiture relieved, by paying the value of the annuity. (Perkins v. Kempland, 2 Black. Rep. 1106. Wyllie v. Wilkes, Doug. 519. Meaghan, a Bankrupt, 1 Sch. & Lef. 180.) So, in cases of bonds to trustees, for securing a provision to the wife,'if there be a remedy at law prior to the bankruptcy, and the bond be forfeited at law, Chan-eery will avail itself of the debt at law, and allow the trustees to prove, in order to protect the party who is in conscience entitled, though the debt is in equity not then payable, and is suspended upon a defeasance. (Ex parte Winchester, and Ex parte Groome, 1 Atk. 116. cited and approved by Lord Kenyon, in 7 Term Rep. 98.) So, in the case of a bond to replace stock by a given day, and to pay the dividends in the mean time ; if the bond be forfeited before the bankruptcy, either as to the stock, or the dividends, the obligee may, in either case, be admitted to prove the dividends due, and the value of the stock at the date of the commission, by analogy to the case of annuities, even though the bankruptcy was previous to the time at which the stock was to be replaced. (Ex parte Day, 7 Ves. 301. Ex parte King, 8 Ves. 334.) And in these cases, the discretion of the Chancellor sitting in bankruptcy, to order *288 proof upon a valuation, instead of a sale of the securities, is regulated by circumstances. (Ex parte Smith, 1 Ves. & Bea. 518.)
*287 Bondg to secure annuities, bonds to trustees for securing a provision for a wife, and bonds to replace stock, on a certain day, are provable as legal debts.
*288 T'tiere is a very strong analogy between the case before me, and the class of cases which has been referred to; and since a complete and absolute debt, in law, was due and owing to the plaintiff’s trustees, for his benefit, and on his account, before the bankruptcy, there is no reason why the trustees should not be admitted to prove that debt, and have the value of his equitable demand allowed, equally as in the case of annuities, or of stock, or of a provision for the wife. This case does not fall within the difficulty stated in the case of The Overseers of St. Martin v. Warren, (1 Barnw. & Ald. 491.) For here was not a debt upon a contingency, which was in its nature incapable of valuation, and so not provable under the commission. That was a bastardy case, in which the debt was perfectly uncertain in its value, for there was not only the contingency of life, but of health and uncertain expenses. This case is much more analogous in principle to that of Clinton & Norton v. Hart, (1 Johns. Rep. 375.) in which it was held, that a bond forfeited before the insolvent’s discharge, and conditioned to procure certain conveyances to be executed and recorded, contained a debt provable under the insolvent act, in which the rule is the same as in the bankrupt act, as to what debts are to be discharged. The sum was capable of liquidation by the party’s own oath. So, here the demand of the plaintiff was capable at once of being ascertained with certainty. He was entitled to have the amount of the loans he had advanced, and the debt for which he was fixed as indorser, or liable to be prosecuted as surety in the bonds, paid him. There was no difficulty in swearing to a precise amount of principal and interest, which, though not actually paid, must certainly be paid by him. I do not discover a case which would authorize me to say, that a surety fixed at law, and having as a *289 security, an absolute note for a sum certain due and payable, or a judgment in the name of his trustees, but for his use, for a sum certain due and payable, may not be admitted to prove, because the notes upon which he is fixed as indorser, or the forfeited bonds in which he stands as security, have not been actually paid. He has his legal absolute debt, liable only to be defeated on equity by the very remote and possible contingency, in the desperate case of bankruptcy, that he may never be called upon to pay the notes and bonds.
The statute of limitations was also relied upon as forming, of itself, a distinct bar to this suit; and, if I am correct in the view I have taken of the effect of the bankrupt certificate, it will be unnecessary to examine this' other ground of defence. But, in a case of so much discussion and difficulty, and involving such nice distinctions, it may be most discreet, as well as satisfactory to the parties, that this branch of the defence should, also, be considered, and it would be very desirable, if the case is hereafter to be submitted to the Court of Appeals.
It has been observed, that this suit was a substitute, by consent, for a special action on the case upon the assumpsit arising in law, and the defendants ought to be entitled to avail themselves of the statute of limitations, to this bill in equity, if the statute would have formed a good plea in bar to an action at law. It is certainly a sound principle, that if a demand upon simple contract can be enforced in equity, as well as at law, the benefit of the statute may be had in equity as well as at law, otherwise the creditor, by taking this course, might entirely elude the bar of the statute.
If a demand on a simple contract can be enforced in equity, as well as at law, the debtor has the benefit of the statute oflimitations in equity, as well as at law.
It is upwards of twenty-three years since the plaintiff entered into those engagements for J'dark, for which he now seeks indemnity and reimbursement, and twenty-two years since M. was discharged under the bankrupt act 5 and the last payment made by the plaintiff, as surety, was *290 ten years before the death of Mark, Prima facie, then, the statute is a bar to the suit, and it lies with the plaintiff to bring his demand within one of the excepted cases.
An acknowledgment, to take a case out of the statute of limitations, must be unqualified, and of a present subsisting debt, within six years.
As the plaintiff has elected to sue upon the ' original parol assumpsit, deduced from the fact of his engagements as surety, and the verbal promises of security and indemnity made at the time, he is not entitled to place his demand under the protection of any collateral undertaking of M. by specialty. The question is to be considered independent of the sealed note and the bond,, and as if these instruments had never been executed.
Then, it may be asked, where is the acknowledgment or evidence of a new promise, within the last six years prior to the death of M., that is to take the case out of the statute ? There was no account presented to M., and no personal promise to pay. There were no admissions, that he owed any subsisting debt; and when he was examined as a witness, in 1820, in the suit of the plaintiff, against the executors of John Ferrers, he swore he was not interested in the suit; if he had deemed himself chargeable with this demand, he could not have sworn so, because, whatever moneys the plaintiff recovered in that suit, went to diminish his demand in this. .An acknowledgment by the party, to take the case out of the statute, must be of a present, subsisting debt. An acknowledgment of a debt, is evidence for a jury to presume a new promise; and it is the new promise, and not the mere acknowledgment, that revives the debt, and takes it out of the statute. (Clementson v. Williams, 8 Cranch, 72. Danforth v. Culver, 11 Johns.Rep. 146. Johnson v. Beardslee, 15 Johns.Rep. 15. Lord Mansfield, in Whitcomb v. Whiting, Doug. 652.) There must be an unqualified acknowledgment of a subsisting debt, within six years, to raise a valid promise to pay; and if the acknowledgment be qualified in a way to repel the presumption of a promise to pay, it is not evidence of a promise to pay. The cases of Danforth v. *291 Culver, (11 Johns. Rep. 146,) and of Lawrence v. Hopkins, (13 Johns. Rep. 288.) went upon this distinction, and this is the doctrine explicitly and ably stated in Sands v. Gelston, (15 Johns. Rep. 511.)
If there be no acknowledgment of Mark, from which a promise to pay can be deduced, (and I see no evidence of any,) then is there any constructive acknowledgment made by any person, under the order or assignment of M., that, will be sufficient to revive the demand ? In Whitcomb v. Whiting, (Doug. 652.) it was held, that an acknowledgment by one joint drawer of a promissory note, took the note out of the statute of limitations as to the other drawers, for here one acts virtually as agent for the rest, and all were equally bound as debtors. The case of Jackson v. Fairbank, (2 H. Bl. 340.) went further; and it was held, that payment of a dividend, within six years, under the commission, was such an acknowledgment of the debt, by the assignees of one maker of a promissory note, as to take the case out of the statute In respect to the other maker. The payment by the assignees of one maker, was considered equivalent to an. acknowledgment by this maker, and sufficient to bring the case within the decision in Whitcomb v. Whiting. But this last case was questioned and shaken, and not regarded as an authority, which the K. B., in Brandham v. Wharton, (1 Barnwell & Ald. 468.) were prepared to obey. Lord Ellenborough said, he was not inclined to go beyond the case in Douglas, and there the acknowledgment was not, indeed, by the party himself, but by one of the parties bound, and who could be called upon for contribution. In the present case, the assignees of M. have paid no dividend to the plaintiff; and is it possible, that a recovery or payment, in 1820, of moneys, under the order of M. upon Ferrerss drawn in 1800, is to be construed into a promise by to pay and indemnify the plaintiff for his general claims as surety on bonds and notes for M, ? There would be no *292 justice in such an inference, nor is there any authority for such a conclusion : and it may be truly said, that neither the executors of Ferrers, nor the trustees m the trust deed to Townsend fy Jones, were constituted agents of -M. for any such purpose. It was equally a forced presumption, and hard and unjust, to consider a payment of a dividend assignees of a bankrupt partner, as equivalent to an unqualified acknowledgment by the bankrupt of the debt and promise to pay. The original debt might thus be kept continually on foot, while the party, originally bound, was wholly unconscious of any such continuing obligation, and was constantly denying the debt, and repelling every presumption of a promise by him to pay. It is going unreasonably far, to construe payments by assignees or trustees, who are not parties to the contract, or under any personal obligation to pay or contribute, as meaning more than they plainly import, or as carrying with them sufficient evidence of a renewed personal promise of the original debtor to pay. Such special trusts were not created for any such purpose; and it is perverting the intention of the piarties, and is plainly repugnant to the reason and equity of the trust, to make the ordinary execution of the trust the ground of a constructive new assumption of the debt by the debtor. The language of the transaction would seem to be directly otherwise. Lord Eldon, in alluding, in ex parte Dewdney, (15 Vesey, 499.) to the case of Jackson v. Fairbank, said, it could not be that a creditor, who could not, from the effect of the statute of limitations, maintain an action against a solvent partner, might, by forcing a dividend from the assignees of the bankrupt partner, raise a new assumpsit, upon which he could sue the solvent partner.
A payment by the trustees, or by the asstgnrupt6f no^being parties to contractj’^win a aeknowledgment of debt, so as to the^tatute of ljmitations,
It is immaterial in this case, whether the statute begins to run from the date of the bond and notes on which the plaintiff ivas bound for M., or from the forfeiture of them, or from tlie earliest payment in 1800, or the latest *293 payment in 1810; because, in the last case, the statute had closed upon the demands before the death of M. But I should think the plaintiff had a cause of action when the notes and bonds became payable, and were not paid by M.; and he certainly had, upon the first payment. The breach of the contract existed then, and the statute ought to be computed to have run from 1800, or twenty years and more before the death of M. In Battley v. Faulkner, (3 Barnw. & Ald. 288.) A. delivered to B. wheat, but not of a quality according to contract. B. was compelled by a suit in Scotland, which lasted many years, to pay damages to his vendee, and he then brought assumpsit against A., for breach of contract, alleging, as special damage, the damages so recovered. And it was held, that though such special damages occurred within six years, yet the breach of contract, the gist of the action, was known to B. more than six years before, and the plea of the statute of limitations was held good.
But it is said, that the will of M. revives the demand of the plaintiff, though barred by the statute of limitations.
A devise for justPdeb?s°does rev"®rel by the statute or ^'chaígTá ^ ^bankrupt or insolvent,
I think it is very apparent, from the language of the will, that the testator never intended to make provision for the debts of the former house of M. &/■ S., and from which he had been discharged twenty years before. He evidently alluded to the debts and contracts of his own creation ex-elusively, and arising from the new trade “ which he had been engaged in for some time pastand I am satisfied we should grossly pervert the testator’s intention, in this case, if we diverted his property, under colour or pretext of some words in the will, to the discharge of his old partnership engagements.
A devise of lands, in trust to pay debts, was formerly supposed to include debts, upon which the statute of limitations had closed. (Gofton v. Mill, 2 Vern. 141. Blakeway v. Strafford, 2 P. Wms. 373. Andrews v. Brown, Prec. in Ch. 385. 3 P. Wms. 89. Lord M., in True- *294 man v. Fenton, Cowp. 548.) But this doctrine has always been attended with doubt and difficulty. The decree in Blakeway v. Strafford, was reversed in the House of Lords, and the plea of the statute, which had been overruled, ordered to stand for an answer. Lord Hardwicke, in Lacon v. Briggs, (3 Atk. 107.) said, that the judges had always complained of the doctrine; and in Oughterloney v. Earl Powis, (Amb. 231.) he wondered how it came to be so decided. The doctrine of these old cases appears lately to have undergone a reasonable modification; and a distinction was made by Lord Redesdale, in the case of The Executors of Fergus v. Gore, (1 Sch. & Lef. 107.) between those debts in respect to which the period of limitation had been already completed in the testator’s life, and which are still presumed to be paid, and those upon which the statute has not run, and which, under a provision, by will, for payment of debts, are not subject to be barred by the statute running after the death of the testator, for the trustees neglect shall not prejudice the creditor. All, then, that the cases mean, under this new construction, is, that the statute does not run after the testator’s death, against a debt which was not barred by it before his death. In ex parte Dewdney, (15 Ves. 479.) Lord Eldon left it as a doubtful point, whether a devise for the payment of debts revived a debt within the statute; and he thought it extremely questionable, whether the testator so intends, because those debts are presumed to be paid. In arguing that case, Sir Samuel Romilly, who was deeply versed in Chancery rules and practice, considered it to be a point of considerable doubt, whether that old doctrine be the established doctrine of the Court; and he said, that Lord Hardwicke, Lord Kenyon, and Lord Alvanley, were all dissatisfied with the rule in P. Williams, that a trust for the payment of debts would sustain a claim against the statute of limitations.
The question, which had been a vexed one for a great *295 length of time, and was quite afloat and unsettled at Westminster Hall, received, an elaborate discussion, as late as 1813, and the cases were all accurately reviewed, and a strong, and probably a final settlement of the question, made by the Vice Chancellor, in the case of Burke v. Jones, (2 Ves. & Bea. 275.) He decided, that a devise of real and personal estate, in trust for the payment of a just debt, does not revive a debt upon which the statute of limitations had taken effect, by the expiration of the time, before the testator’s death.
He observed, that no case had been cited within the period of half a century, in which the rule is stated, that a devise in trust for the payment of debts, is to be considered either as a waiver of the statute, or as an acknowledgment that such debts existed and were unpaid, except for the purpose of complaining of it. He then went through all the authorities, and said he had spared no pains in collecting every case in print, or that he could hear of, bearing upon the question; that he had traced the history of this supposed rule to its foundation, and had examined to the bottom the authorities on which it had been supported, and compared them with the register’s book. He concluded, as the result of his research, that there w'as not pne case in which this doctrine had been established, to the full extent that had been contended; that it rested simply upon dicta, opposed to dicta, and had been disapproved of by every Judge, from the time of Lord Hardwicke; that it was contrary to the decision in Legastick v. Cowne, (Mos. 391.) and, to the final decisions in Lord Strafford’s case, followed by the ultimate decision of Lord King, and substantially contradicted by every subsequent authority. The doctrine standing upon an unnatural conjecture as to the intention, is bad upon principle, and pregnant with danger and injury, by inviting stale demands, and discouraging provisions for the payment of debts. The statute, which was made for the *296 benefit of those who may have paid, but have not the means of proving it, does not permit a demand of a debt beyond its limits to be enforced, upon the possibility that it may still be undischarged. The plain line is, tha(t the testator intends the Courts of law and equity to determine what are just debts; leaving his executor at liberty to use all means of resistance prescribed or allowed by the law: thus encouraging provisions for creditors by the assurance of a protection to the assets against demands which the testator himself could have resisted, who, relying on the statute, may have destroyed his vouchers.
This decision appears to me to be well founded upon principle, and upon the construction of the authorities, and to put an end to this litigious question. Even without its light and its aid, I should have no hesitation in concluding that the will, in the present case, did not intend to revive debts barred by the statute of limitations, or the bankrupt’s discharge, and that it evidently referred to a new class of debts, created by the testator’s new trade, subsequent to his bankruptcy.
I have thus endeavoured to examine this case under the various aspects in which it has been presented, and I am not able to perceive any well founded objection to the defence against the plaintiff’s claim, whether that defence be placed upon the bankrupt’s certificate, or the statute of limitations. I shall, accordingly, decree, that the bill be dismissed without costs'.
Decree accordingly.