The opinion of the court was delivered by
Smith, J.
Conrad Hebei, defendant in error, brought an action in the District Court of the city and county of Lancaster, for money had and received against Nathan L. Boulden, in which a verdict and judgment were, on the 13th of February, 1826, rendered for the plaintiff, for three hundred and forty-nine dollars. A certain Philip Mays, assignee of Elizabeth Heidelbaugh, had placed in the hands of Nathan L. Boulden, an attorney at law, a bond due from Jacob and John Heidelbaugh, for collection, on which a judgment was obtained the 25th of March, 1822, for six hundred and fifty six dollars and seventy-five cents, in the same court. On the 26th of November, 1822, Boulden received from the defendants two hundred dollars, and, on the 15th of May, 1823, the further sum of four hundred and twenty-dollars on this bond. On the 16th of May, 1823, he paid the amount due on the bond to the' said Philip Mays. Philip Mays and Conrad Hebei, on the 23d of November, 1822, executed the following agreement, under their hands and seals, in the presence of G. Withers, to wit: “We, the within subscribers, do certify that we have settled all matters in variance respecting the bond left in the hands of Nathaniel L. Boulden, Esq., for collection, and have agreed that each of us pay one half the costs, and divide the amount of the bond and interest equally. Witness our hands and seals this 23d day of November, 1822. ' His
Conrad X Hebei, (Seal.)
mark.
Plis Philip X May, (Seal.) Witness present, G. Withers.”
mark.
*313 George B. Withers, attorney for Conrad Hebei, on the 24th of May, 1823, served a written notice on Nathan L. Boulden, in the following words: “ Philip Mays, assignee of Elizabeth Heidelbaugh, against Jacob Heidelbaugh, and John Heidelbaugh, District Court, December term, 1821, No. IS, Lancaster, May 24th, 1223. Sir, — Take notice that we claim the one half of the judgment in the above cause, as by agreement entered into between the above Philip Mays and Conrad Hebei. You will therefore not pay over the amount to which the said Conrad Hebei is entitled, as we hold you responsible for the same. George B. Withers, attorney for Conrad Hebei. Nathan L. Boulden, Esq. ”
At the trial, seven bills of exceptions were tendered to, and sealed by the court, and the decisions upon these exceptions have been assigned for error in this court. But it was admitted on the argument, by the plaintiff in error, that all the errors assigned in the opinion of the court below, on the exceptions to the testimony, and in their charge to the jury, presented only two questions for the decision of this court. These will be considered and decided. The first question is, was the court below correct in admitting as a witness, George B. Withers, the attorney of Conrad Hebei. Mr. Withers and his colleague, had made an agreement in writing, (not produced,) with Conrad Hebei, by which they were to receive forty-five dollars each, if they recovered the money from Nathan L. Boulden; but, as there was no evidence that this agreement was under seal, or such a contract as could be enforced against their client, the objection to the admission of Mr. Withers, falls within the principle of the decision of this court,- in the case of Miles v. O’Hara, 1 Serg. 8? Bawle, 32. It was an objection to the ci’edit and not to the competency of the witness. The District Court, therefore, properly admitted him.
There was no error in admitting the testimony contained in the second, third, fourth, fifth, and sixth bills of exceptions. The evidence therein mentioned was correctly admitted, to show that Boulden had received the money. The other question submitted to this court, grows out of the agreement between Philip Mays and Conrad Hebei, and the construction given to the same by the District Court, in their charge to the jury. Was Nathan L. Boulden, the attorney who conducted the suit and Collected the money for Philip Mays, justifiable in paying it over to the client by whom he wtas employed," notwithstanding that agreement; Or was he compellable, by reason of the agreement, to pay it to Conrad Hebei? The law as to agents, is nqt generally applicable to attornies: the relation of the latter to their clients and the court, renders their authority and responsibility peculiar in many respects. It is of an intimate and a highly confidential.character; so much so, indeed, that the acts of the attorney in the suit, will b$nd his client even to his prejudice, nor will the court look beyond the attorney *314 to his authority. Denton v. Noyes, 6 Johns. Ch. Rep. 296. His fidelity, on the other hand, is secured by the obligation of an oath, and the power of the court to inflict summary censure and punishment. The court regard him in the light of an officer attached to their jurisdiction, no less than as the intimate representative of the party for whom he appears before them. It would be inconsistent with the duties of his situation, and the necessary economy of courts of justice, to subject the attorney at Jaw, to the inconvenience of trying, in a suit against himself, the rights of different claimants, to money which he had recovered for his client.
In this agreement, there is no reference to Nathan L. Boulden, except for the purpose of designating the bond, concerning which the agreement was made. All that it requires, was to be done by the parties themselves. It contains no directions or request to him. On its face, it imports a division of the money when collected; not an assignment of the bond, nor an agreement that Hebei should receive the money from the attorney. It does not appear that the agreement, or a copy of it, was ever exhibited to Boulden; and I cannot conceive how it is possible to consider it as an order to him to pay over one half of the money recovered, to Conrad Hebei. But if Philip Mays had actually given an express order for the money j and before the same was accepted had directed Botilden not to accept or pay it, the latter would have been justified in not paying it. Nothing is more common than for a man to tell a creditor, “ I have sued for money, and when it is collected I will pay you.” If, on such a promise, with notice to the attorney, he could be subjected to an action by the creditor, it would lead to confusion, and make the situation of an attorney at law exceedingly embarrassing. To the agreement in this case, Nathan L. Boulden was neither party nor privy; nor did he enter into any engagement relative to it, by which any legal obligation or liability on his part accrued, to sustain the action of Conrad Hebei against him.
The court below, in charging the jury, that a payment by him to Philip Mays, after the agreement in question and notice thereof, would not exonerate him from his legal obligation to pay Conrad Hebei so much as he was entitled to under the agreement, erred. Conrad Hebei was not entitled to any thing from Nathan L. Boulden. The judgment must therefore be reversed, and a venire facias de novo awarded.
Ton, J.
I agree with the majority of the court, that the decisions of the judges below, were correct in all the six bills of exceptions taken by the defendant below to the plaintiff’s evidence. Clearly, on the first exception, George B. Withers was a legal witness. Being put by the defendant on his voir dire, he swore that he had transferred his interest in the fee to the other attorney of the plaintiff, Mr. Park; that he had ceased to be counsel in the *315 cause: that he did not expect to receive, and never would receive any part of the fee; and that he’had no interest in the case. If he swore the truth (and there was no reason laid before the court to dohbt it,) he was a competent witness.
2nd Exception. — The agreement between Mays and Hebei, of the 23rd of November, 1822, and the notice to Boulden, were unquestionably, evidence. They constituted the plaintiff’s title.
As to the third, fourth, fifth, and sixth exceptions by the defendant below to the evidence, the notice was evidence. The record of the suit, Mays, Assignee of E. Heidelbaugh, v. Jacob and John Heidelbaugh, was material to show that the money in question had been recovered, and to identify the plaintiff’s claim. BouU den’s receipts for two hundred dollars and for four hundred and twenty dollars, were not legal evidence only, but indispensable. JBoulden's acknowledgment after suit brought, that he had not in fact paid over the money to his client, was rightly admitted, beyond a doubt. So, any declaration by him upon the subject either before or after the suit. As to offering an indemnity to Boulden, none appears to have been asked for. And as to interest, clearly, if in a case of this kind the plaintiff makes out his title to the principal, there can be no error in allowing him the interest also. So far, as I take it, we are all agreed there is nothing erroneous.
On the residue of the case, I am obliged to dissent from my brethren. The court below charged the jury in substance:,
1st. That the agreement of the 23rd of November, 1822, amounted to an equitable assignment of the money in question; and, that if Boulden had notice of it before he paid the money to Mays, and if a demand was made under it by Hebei or his agent, while the money was in Boulden’s hands, then paying over after that time to his client will not exonerate Boulden, the attorney, from, his legal obligation to pay to Hebei so much as he is entitled to under the agreement. But that, if the jury believed that the money had been paid over by Boulden to Philip Mays, on the 16th of May, 1823, according to the receipt on the bond and the evidence of Kitty Mays, and that no notice had,, before that time, been received by the defendant, of the agreement between Mays and Hebei, then the defendant, Boulden, was entitled to their verdict.
2nd. The court charged the jury, that the defendant below was not exempted from any obligation to pay to Hebei the money in question, on account of having collected it in his capacity of attorney at law for Philip Mays. Was the court right on these points of law?
The agreement, the foundation of the suit, is in, these words: — -
“ We, the within subscribers, do certify, that we have settled all matters in variance respecting the bond left in the. hands of Na» than L. Boulden, Esq., for collection, and have agreed that *316 each of us pay one half of the costs and divide the amount of the bond and interest equally. Witness our hands and seals, this 23rd' day of November, 1822.
“ Witness present, His • -
“ Gr. Withers, “ Conrad X Hebei, (Seal.)
mark.
.His
“ Philip X Mays, (Seal.”)
mark.
It would thus appear that the bond which had been informally-assigned to Philip Mays, was not exclusively his property, but belonged in part to Conrad Hebei. In ascertaining.whether the charge of the court was correct, it is material to consider the case as it was, put before the jury by the parties. No proof appears to have been given, or attempted on the trial, to show that the agreement of the 23rd of November, 1822, was not genuine, and known by Boulden to be so; nor to show any imposition practised upon Mays, nor to show any ground of suspicion against the fairness and justice of Hebei’s title to one half of the money; nor that Boulden disputed the formality of the paper at the time of the demand, or required further directions from Mays, or claimed to retain for costs, or claimed an indemnity. Boulden’s sole defence on the trial, I mean his sole defence as far as respects matters of fact, appears to have been, that previous to the notice of the assignment, he had paid over the whole money to Philip Mays, his client, as in duty bound; a most invincible defence if made out. In order to make it out, Boulden produced a receipt in full from his client, dated the 16th of May, eight days before the notice by Hebei: also a witness, the daughter of Philip Mays, who swore she was present when the receipt was given and the money paid. This receipt, if true and honest, was conclusive of the whole cause, and so admitted to be by Hebei’s counsel, as far as I can see from the record, and certainly so decided by the court. But Hebei contended that the receipt was untrue not in date only but in every thing else; that so far from paying the whole money at the date of the receipt, Boulden had paid no part of it down to the time of bringing the suit, and that the writing had been fabricated, date and all, for the sole purpose of depriving him, Hebei, of his money. . Now it is impossible for me to imagine how the court below could have done better with the cause, than to put it to the jury upon the same grounds upon which both the parties, by their proofs, had put it to the jury. Whether the verdict was right or wrong we cannot inquire, nor know. A verdict, approved by the court that tries the cause must settle contested facts. Under this charge of the judge, the jury must be taken to have decided the fact conclusively, that Boulden either never did pay over the monéy to his client, or paid it over after he had full notice, that by a *317 fair title, one half of it had become the property of Conrad Hebei. Then, if the charge of the court was correct, there is an end of the case. The court told the jury that the paper of the 23rd of November, 1822, was in effect an assignment. Now, I agree the word “ assign,” is not in that paper. But I hold that no such word is necessary. Nor any other particular form of words. I believe, if the transfer or contract had been by parol only, it would have been good against Boulden, if he knew it, and knew that the money belonged to Hebei. But here was a minutely written description of the property, with an acknowledgment of the right and title of Hebei under the hand and seal of Mays, and in the presence of a witness subscribing. The recovery of it neither was nor could be misunderstood by Boulden. Many land titles are held by documents much slighter and more conclusive. It is immaterial whether we call it a declaration of trust or an equitable assignment. If the transaction was honest and fair, Mays was bound by it, and so was Boulden. It could not be defeated by any act of one or the other. Mays could not again dispose of the same money. On his insolvency, his assignees would have no title to it. If he absconded, it could not be touched by attachment. If he died, it would not become assets.
In equity, even debts may be assigned by parol. 2 Com. Dig. Chancery, 2, H. An assignment by the clerk of the, peace to creditors under an insolvent debtor’s act, need not be under seal, that being considered an unessential formality, though required by the statute. 2 Atk. 242.
A. indebted to B., gives him a draft on a fund due to him, A-, out of the exchequer, decided to be a valid assignment, and it prevailed against the assignees of A., who became bankrupt immediately after. Row v. Dawson, 1 Vesey, 331. A gift of a bond passes the equitáble interest. 3 Atk. 214. And in Sharpless v. Welsh, decided at Nisi Prius, by judges Smith and Breckenridge, 4 Dali. 279, it was held that a mere private letter to a friend proposing a division of the proceeds of a bill of exchange among certain creditors, was a valid equitable transfer of the money afterwards received, and sufficient to cut out a foreign attachment, which had been laid upon the fund not only before the creditor had agreed to the distribution, but before he had seen or heard of the title.
In Wakefield v. Martin, 3 Mass. Rep. 558, it was decided, that the assignment of a debt, even without any notice, will overreach an attachment. And in the courts of equity in England, the same decision has been repeatedly made. I do not know that any case exists requiring a technical form of words for the assignment of a chose in action. In Buchanan v. Taylor, Addison’s Rep. 155, held that an equitable assignment was valid, and indifferent whether the assignment was in writing, by parol, or by mere delivery of the evidences of right.
*318 Is there any thing in the fact of Boulden having received the money in the capacity of attorney, or agent, to distinguish this case and protect him from this suit ? I apprehend not. ' On this head, to save time, I refer to the authorities apparently most conclusive, produced on the argument, and will not repeat any of them. That an attorney is not bound to look beyond his own employer, is a good general rule; but it is a rule which in equity, and in law too, is liable to many exceptions. He who delivers to an attorney a bond for collection, whether payable to himself or another, whether with an assignment or not, may fairly be presumed the owner. But, if he afterwards and before the money is paid over to him, is known not to be the real owner as to the whole, or as to part, or if he has sold it and got the amount from another person, or has in any way fairly disposed of it; or if it appears that he was only trusted to convey the bond to the lawyer, or that he picked the bond up in the streets, or defrauded some one out of it; or, if in any other possible shape, it appears that he never had an interest, or that the interest he had is vested in another person, then I do hold that the attorney, who knowing these things or knowing any one of them, shall yet go on, under an obligation of duty or without it, to pay money voluntarily to a man who is not the owner, may by the rules of law, be compelled to pay it over again to the man who is the owner. In Dottin’s Case, 1 Stra. 547, the client had borrowed sundry deeds and delivered them to his attorney. The owner complained to the court; and nothing saved the attorney from an attachment, but his having given the deeds back again to his client before he knew that they were not the client’s property. In the common case of an attachment of a deb.t in suit, I do not know that it has ever been imagined that the attorney of the plaintiff, after notice, could with safety pay the money to his client. Therefore, my opinion would be, to affirm the judgment.
Judgment reversed.