MILLER *against* HOWRY and another, Administrators of
HOWRY.

IN ERROR.

An execution, issued upon an absolute judgment, taken to indemnify the plaintiff,
as the surety of the defendant, for a debt which is not paid by the surety, at the
time execution is issued, is neither erroneous, nor irregular; nor is it fraudulent
by the statute of the 13th Elizabeth, in consequence of having so issued before
the actual payment of the debt, for which it was given as an indemnity. It is a
measure to secure him by means intended to produce payment of the debt out of
the effects of the principal by whom it is due.

ERROR to the district court of *Lancaster* county. This was
an amicable action on the case, in which *Henry Howry* and *Da-
vid Book*, administrators of *John Howry*, deceased, the defend-
ants in error, were plaintiffs, and *David Miller*, the plaintiff in
error, was defendant, and in which, the following case, stated in
nature of a special verdict, was agreed by the parties:

*John Howry*, the intestate of the plaintiffs, *Abraham Doner*,
*Samuel Herr*, *Abraham Metzler*, *Samuel Howry*, and *Peter Es-
penshade*, severally obtained judgments in the court of Com-
mon Pleas of *Lancaster* county, on their several bonds, dated the
6th day of August, 1825, against *Daniel Howry* for the several
and respective sums of money stated in the said bonds, which
judgments were entered up in the said court on the said 6th day of
Aug. to the term of April, A. D. 1825, and on the 9th day of Aug.
1825, writs of *fieri facias* issued upon the said several judgments
against the said *Daniel Howry;* for the debt, interest, and costs of
the said several judgments returnable to August term, 1825, which
were put into the hands of the sheriff, and levied on the *personal*
property of *Daniel Howry*, the defendant on the same day, to wit:
the 9th day of August, 1825; that the property thus levied upon,
was sold by the sheriff on the 14th of September, 1825, and on the
20th day of September, 1825, the sheriff, in pursuance of rules ta-
ken by the said plaintiffs, in the several suits, upon him, paid into
court a sum of money, arising from the sale of the personal prop-
erty of *Daniel Howry*, sufficient to pay the debts, or a large por-
tion thereof due to the said several plaintiffs, by virtue of their
several judgments. That *David Miller*, the defendant, on the 1st
day of April, 1825, entered up a judgment against *Daniel Howry*,
in the Common Pleas of *Lancaster* county, to January term,
1825, on a bond dated the 30th December, 1824, in the pen-
alty of thirty-six thousand dollars, conditioned to pay on the
1st of April, 1825, two thousand dollars, and so on annually, the
sum of two thousand dollars until the sum of eighteen thousand

(Miller *v* Howry.)

dollars be paid; that on the 13th day of August, 1825, a *fi. fa.*
issued on this judgment, to August term, 1825, which was
put into the sheriff's hands on the same day; to which *fi. fa.*
the sheriff returned levied on real estate, inquisition held and
property condemned, and also levied on personal property of the
defendant, subject to prior levy. That'to November, Term, 1825,
a writ of *venditioni exponas* issued, under this judgment, to
which the sheriff returned, stayed by motion made in court, and
therefore unsold for want of buyers.　An *alias venditioni* then is-
sued upon the said judgment, on the 29th of January, 1830, to
April term, 1830, which was returned, the real estate of de-
fendant, sold at and for the sum of fifteen thousand and fifty-one
dollars to *David Miller,* who retains the same money by virtue
of his judgment, it being the oldest judgment entered to January
term, 1825, for the real debt of eighteen thousand dollars, with inte-
rest from the 30th of Dec. 1824, except the sum of one hundred and
thirty-one dollars the amount of the costs. That neither *David Mil-
ler* nor any person for him ever received from the defendant, or any
other person, any other or further sum of money on account of or in
discharge of the said judgment, but the sum of fifteen thousand and
fifty one dollars obtained so as aforesaid. That in September, 1822,
*Daniel Howry* gave his four several bonds to *George Diffen-
bach,* each for the sum of one thousand and eighty dollars, paya-
ble on the 1st of April, 1824, 1825, 1826 and 1827, with interest.
For the security of the payment of the money, due by these
bonds to *George Diffenbach, John Howry,* the intestate of the
plaintiff entered into the said bonds and became bound in the same
as the security of the said *Daniel Howry.*　That on the 23d day
of April 1825, *Daniel Howry* and *John Howry,* the surety of the
said *Daniel,* gave their bond to *Joseph Potts,* for the penal sum
of one thousand dollars, conditioned to pay to the said *Joseph
Potts,* the sum of five hundred dollars, on the 1st day of April,
1826, with interest, that in March, 1825, *John Howry* loaned to
*Daniel Howry* the sum of two hundred and fifty-eight dollars.
That the said judgment so entered up in the court of Common
Pleas, on the 6th day of August, 1825, to April term, 1825, by
the said *John Howry,* against the said *Daniel Howry,* in the
penal sum of eight thousand dollars conditioned to pay four thou-
sand dollars with interest, was given by the said *Daniel,* to the
said *John Howry,* to secure the payment of the said sum of two
hundred and fifty eight dollars and to indemnify the said *John*
*Howry,* against the payment of the said several sums of money
with interest for the payment of which he was so, as aforesaid,
bound, to the said *George Diffenbach,* and the said *Joseph Potts.*
That on the 6th August, 1825, when the said bond and judgment

(Miller *v.* Hower.)

were given by the said *Daniel* to the said *John Howry*, the said several sums of money, nor any part thereof, had not been paid by the said *John Howry*, to the said *George Diffenbach* and the said *Joseph Potts;* but since the said judgment of the 6th of August, 1825, was given by the said *Daniel* to the said *John Howry*, to indemnify the said *John*, as aforesaid, he the said *John* has been compelled to pay, and did pay to the said *Joseph Pot ts* on the 7th day of April, 1826, the sum of seven hundred and fifty seven dollars, fourteen cents, the amount of the principal and interest due on said bond given by *Daniel* and *John Howry* to *Joseph Potts;* and the said *John Howry* has also been compelled to pay, and did pay to the said *George Diffenbach* on the 8th day of April, 1830, the amount of the debt due by the said bonds given as aforesaid by the said *Daniel* and the said *John Howry*, his surety to the said *Geo. Diffenbach*, together with the interest and the costs of suit brought by the said *George Diffenbach* against the said *John Howry* as the surety of the said *Daniel*, for the recovery of the money due to *George Diffenbach* in and by the said bonds. That no part of the said moneys so due to the said *Joseph Potts* and *George Diffenbach* was ever paid by the said *Daniel Howry*, that the said *Daniel Howry* on the 13th August, 1825, made a general assignment, of all his estate to *Robert J. Potts* and *Isaac Lawrence* for the payment of his debts, and soon after died, utterly insolvent, without ever refunding to *John Howry* any part of the money so paid by the said *John Howry* for the use of the said *Daniel* to *Joseph Potts* and *George Diffenbach.*

On the judgment of *Abraham Doner*, v. *D. Howry*, of April, 1825, the *fi. fa.* issued 9th August, 1825,

On the *judgment of Samuel Herr* v. *Same* of April 1825, the *fi. fa.* issued 9th August, 1825.

On the judgment of *John Howry*, v. *Same* of April, 1825, the *fi. fa.* issued 9th August, 1825

On the judgment of *Samuel Howry* v. *Same* of April, 1825, the *fi. fa.* issued 9th August, 1825

On the 29th of August, 1825, on motion of Mr. *Porter*, on behalf of *David Miller's* assignees, and affidavit filed, the court granted a rule to shew cause why the above four *fi. fas.* should not be set aside, and also why the judgment should not be set aside or opened; and *David Miller*, and the other creditors of the defendant let into a defence.

On 20th March, 1827, the rule was made absolute, the judgments and executions to remain as security until a final decision of the question.

If upon the above statement of facts, the court should be of opinion that the plaintiffs *Henry Howry* and *David Book*, the administrators of *John Howry*, deceased, are entitled by virtue of the *fi. fa.* of the said *John Howry*, to August term 1825, to the

money now in court, or that *David Miller* the defendant had no right to interfere with, or impeach the validity of the said *fi. fa.* then in either case, judgment to be entered in favor of the plaintiff. But if of a contrary opinion, then judgment to be entered in favor of the defendant.

The court gave judgment for the plaintiffs, which the defendant removed by writ of error to this court where he filed the following error:

The district court erred in entering judgment for plaintiffs below, on the case stated, and should have entered the same for the defendants below, *John Howry* the plaintiff's intestate, not having paid the original debts on the 9th of August, 1825, the day of issuing the execution, and not till a long time afterwards, viz: a part on the 7th April 1826, and part on the 8th April, 1830, his execution is irregular, and void, and the execution of defendant below, issued 13th August, 1825, is entitled to a preference.

*Ellmaker*, for the plaintiff in error. Two questions are presented by the case for consideration.

1. Can an obligee on such a bond of indemnity as that upon which judgment was entered for *John Howry*, before the payment of the debt against a liability for which it was given as an indemnity, take out execution?

2. Can such execution be controverted by a subsequent judgment or execution creditor, who is not a party to such judgment of indemnity?

1. A surety in a bond, &c. cannot sue until he has paid the debt. *Powel* v. *Smith*, 8 *John. Rep.* 192. *Wharton D.* 576, *p.* 18. The object of giving a surety a judgment bond, is to give him a lien on the land of the principal debtor, and dispense with mesne process, in case he is compelled to pay the debt of the principal. It was never intended to permit the surety to issue an execution at once.

He referred to the mode of proceeding on bonds with a collateral condition, &c. under the statute of 8 & 9 *Wil.* 3. *Rob. Dig.* 142. 1 *Tidd.* 511. Where a judgment is entered on such bond, and the condition appears of record, the plaintiff must issue a *scire facias*, and assign breaches. Where the condition does not appear of record, but is evidenced *de hors* and in *pais* the plaintiff should move the court for leave to take out execution. If he issued execution at once, he did it at his peril; and he contended it may be set aside, either at the instance of the defendant; or of any other person who has an interest in setting it aside, when it is erroneous.

This was analogous to the practice in *Pennsylvania* in case of shewing cause of bail, according to which, no previous order for the writ is required. That issues at the peril of the plaintiff, and will only be set aside, in case he can not, when called on,

(Miller *v.* Howry.)

shew cause of bail. Beyond this no case has gone. If such execution is held to be good, although the plaintiff has not paid the debt for which his judgment is an indemnity, great injustice may be done; for he may sell the property of the defendant and bring the money into court, and let it lie there to his utter ruin, and the great injury of his creditors, and yet he may never pay the debt. Or it may be paid to the plaintiff by the sheriff, when the plaintiff may never become entitled to it. *Workman* v. *Cunningham*, 1 *Peters's Rep.* 243. *Com. D. tit. execution*, C. 7.

A debtor may transfer his property for the use of his creditors, and give a preference to some of them; but in such case, creditors who are not provided for by the assignment, as well as those who are, have a remedy against the assignees, and can compel them to account for, and appropriate the fund. But here if the plaintiff is permitted to appropriate the funds of the defendant, before damnification, who can call him to account? He is irresponsible, the intention of the parties is violated, and a fraud, a legal fraud is allowed to be perpetrated upon creditors; which he contended the statute against frauds and purjuries would not permit. *Roberts' D.* 302. This statute applies to judgments, and executions, and is to be construed liberally.

2. He took a distinction between erroneous process, which is good until reversed, and can be set aside at the instance of the defendants only, and irregular and void process which he alleged could be set aside by one who had an interest in avoiding it. *Philips* v. *Biron*, 3 *Wilson's Rep.* 345. *Allison* v. *Ream*, 3 *Serg. & Rawle*, 139. *Hoyl* v. *Wildfire*, 3 *John Rep.* 518. 2 *Bac. Ab.* 739, 740, 741.

*Montgomery, Champneys* and *Norris,* for the defendants in error. The question raised is to operate on sureties, who are the favourites of the law, whose only safety was in their levy on personal property; for the real estate of the debtor was covered with judgments, which exceeded its value, sureties, who, although they had not paid the debt before they issued execution, had paid it before they sold the property levied on.

They conceded that a surety at large, who has no express engagement from his principal, cannot sue his principal, until he has paid the debt; when the law implies for him a contract on the part of the principal to repay him. In that case the payment is the essential basis of the implied assumpsit, and the suit cannot of course be brought until that occurs. But the right of the surety, is co-extensive with his contract, with his principal, with which third persons have nothing to do. Here the judgment is absolute on its face, and is the express contract of the parties, looking to all the security which the nature of the judgment will afford. The surety goes on the express agreement, and where

(Miller *v.* Howry.)

there is such express agreement, as soon as the surety becomes liable he may sue.

If a bond of indemnity be given to an endorser of a note which is protested, and he is sued upon the note he may sue the bond as soon as the note is protested, and upon judgment have execution, before he has paid the note; so where a judgment bond was given conditioned for the payment of certain notes which were endorsed by the obligee he was permitted to enter judgment, and have execution, although he had not paid these notes; and it was held that the court would apply the money to pay the creditors to whom the surety was bound. *Murray* v. *Grays' adm.* 3 *Bin.* 136. *Ramsay* v. *Gervais*, 2 *Bay. Rep.* 145. *Monell* v. *Smith*, 5 *Cowen*, 441. *Rosewelt* v. *Mack*, 6 *John. Report*. 266, 279, 289. *Bank of Auburn* v. *Throop.* 18 *John. Rep.* 505. 2 *T. Rep.* 100, 1 *Atkins*, 115, 116. *Norton* v. *Whiting*, 1 *Page Rep.* 578. *Gardner* v. *Grove*, 10 *Serg. & Rawle*, 137. The assurance by which a debtor is permitted to give a preference to a creditor is the same, whether it be by judgment without stay of execution, or by deed of assignment, which it is conceded does not come in conflict with the statute of frauds.

Non-payment of money at the day is a forfeiture of a counter-bond. *Ross' Executor* v. *Rittenhouse*, 1 *Yeates*, 443. Here the bond is an absolute bond, it is an express contract between the parties and there is no fraud, in the inception, and no fraud in the objects of the contract. The statute of *Elizabeth*, commonly called the statute of frauds and perjuries, does not apply to this case, *Miller* v. *Race*, 1 *Bur.* 452 *The United States* v. *Hooe at al.* 3 *Cranch Rep.* 73.

If the process of the court is abused most certainly the court will interfere, the proper remedy is an application to the court, and it is not necessary for the plaintiff to apply before issuing execution for permission to take it out. *Frasier* v. *Frasier*, 9 *John. Rep.* 8. *Baily* v. *Waggoner*, 17 *Serg. & Rawle*, 327. *Lewis* v. *Smith*, 2 *Serg. & Rawle*, 142. 18 *John. Rep.* 142.

2. They contended that the execution was not void, but if erroneous at all, it was only voidable at the instance of the defendant, who alone could take advantage of the error. *Stewart* v. *Stocker*, 13 *Serg. and Rawle*, 199. *Cumming* v. *Hackley*, 8 *John. Rep.* 206. 3 *Lev.* 403. 3 *Cain's Rep.* 271 273. *Renolds* v. *Scott*, 1 *Salk.* 273. 2 *Salk.* 674. 3 *Wilson's Rep.* 345 *Jackson* v. *Sellick*, 8 *John.* 262. 1 *Cowen's Rep.* 734. *Jackson.* v. *Delancy*, 13 *John. Rep.* 537. *Howland* v. *Ralph*, 3 *John. Rep.* 20. 1 *Chit. Plead.* 183, 184, 185.

The opinion of the court was delivered by

Gibson, C. J,—The execution having been in due time, and

(Miller *v.* Howry.)

founded on an actual judgment, was neither erroneous nor irregular; and the question therefore is whether it were fraudulent by the *Stat.* 13 *Eliz.* in consequence of having issued before actual payment of the debt for which the counter bond was given as an indemnity. The chief obstacle to a satisfactory conclusion, is a tendency in the mind to view the case as it stood originally, and to consider the question of indebtedness, as still depending on the naked relation of principal and surety. Undoubtedly a surety though presently liable to an action, or even an execution, may not maintain *indebitatus assumpsit*, before actual payment, because the implied promise which is the foundation of that action, arises out of the fact of payment and nothing else. It is implied from the consideration of money paid, laid out, and expended to the defendant's use. But the strictness of the rule by which the fact of payment is determinable, has been relaxed where a negotiable note, or bill of exchange was given, and received in satisfaction, which, it has been held, will support a count for money paid. *Morrison v. Becky,* 7 *Serg. & Rawle,* 246, *Cumming* v. *Hackley,* 8 *Johns.* 206. Where, however, the surety holds a counter bond, in the very sum for which his responsibility stands pledged, his right of action depends on considerations entirely different. Being founded on the undoubted consideration of his individual liability, such a bond is far from being a gift of the money. In *Rosewelt* v. *Mack,* 6 *Johns. Ch.* 281, it was treated as a debt provable under a commission of bankruptcy; and that decision made, as it was, in reference to a process of distribution among creditors, which has been aptly called a statutory execution, goes the length of the present question. The same thing was predicated in *Toussaint* v. *Martinnant,* 2 *T. R.* 100. *Martin* v. *Court, Id.* 640, and *Hodgson* v. *Bell,* 7 *T. R.* 97, which certainly would not have been done had the bond been deemed fraudulent. In fact the question of fraud was expressly made and decided, Mr. *Justice Buller*, declaring in *Toussaint* v. *Martinnant,* that there was a sufficient consideration, though the counter bond was payable before the original bond became due; in which respect that case was much stronger than the present. Here the transaction was an arrangement by which the surety having become paymaster, was to raise the funds from the effects of the principal, by the instrumentality of an execution; and it is admitted, that the object might have been accomplished by an assignment to the surety, who would then have been accountable as a trustee, but who, it is supposed, might, consistently with the actual arrangement, retain what should be recovered, as his proper money, and leave the original debt to fall on the remaining property of the principal. Such was not the notion entertained in *Rosewelt* v. *Mack,* and *Toussaint* v. *Martinnant,* where it was considered that equity would compel him to refund; and though we

(Miller *v.* Howry.)

have not the direct powers of a court of chancery, we would find means to produce the same effect. If, then, there was a sufficient consideration for a present debt, what right have the other creditors to interfere? In settling the construction of the statutes of *Elizabeth,* the judges undoubtedly set out with a determination to cut up voluntary gifts and conveyances by the roots; yet, as has been justly remarked by a respectable writer, they showed an inclination to restrict the import of the word voluntary to cases, where no inducement of interest appeared, and to extend the notion of a valuable consideration to every case which admitted of a supposition that one act was made the condition of another. *Roberts on Fraud. Conv.* 15. It is said by the same writer, that an assignment to a stranger is not to be supported under these statutes, the mere destination of the property to the payment of debts, affording no consideration, because passing nothing from the assignee to the assignor, which can prejudice the former or benefit the latter; but that where a creditor is a party to the assignment, a valuable consideration is found in the forbearance of suit, or mutual accommodation, which is expressly stipulated, or implied from the very nature of the transation. *Id.* 429, 431, 432. This would bring the question back to the point from which it started—was the surety a creditor, and was there a mutual accommodation of the parties? Undoubtedly there was a contingent liability of the principal to the surety, which in transactions of the sort, is invariably the subject of special protection, a provision for indorsers, who have not paid the debt, being an article of almost every assignment. Then, of the existence of mutual accommodation, there can be as little doubt. As has justly been remarked by Mr. *Justice Buller,* the surety is always the effective and responsible man, having been taken because the credit of the principal was doubted, and an arrangement like the present, is a measure to secure him by means intended to produce payment of the debt, out of the effects of the principal by whom it is due, and to satisfy a responsibility which is invariably incurred under a promise of payment or indemnity. It would seem, therefore, that the surety is entitled to the amount of his bond.

Judgment affirmed.