JOHN M. PICKETT, Appellant, *v.* CLARA LEONARD, Administratrix of DARIUS W. KING, deceased, survivor, Respondent.

Where there has been a voluntary assignment for the benefit of creditors, a partial payment of a debt by the assignee does not take the case out of the statute of limitations.

The act of the assignee in paying a portion of the debt is beyond the control of the assignor, who cannot accompany the payment with a qualification or disclaimer, as when made by himself.

HUNT, J. On the 9th day of October, 1852, the firm of H. & D. W. King executed and delivered to the plaintiff their promissory note for $256.64, payable one day after date.

On the 11th day of October, 1852, the same firm made a general assignment for the benefit of their creditors to McKenzie and Foster, directing, among other things, the "payment of all debts now due or now contracted, and hereafter to become due, against us, the said Hosea King & Darius W. King, as such partners, to any person or persons whomsoever, for money actually borrowed, including a debt due the firm of I. & H. Mirick for flour, and all payments upon the said debts to be made *pro rata*."

It was proved and was found by the referee that the plaintiff's note was given for money borrowed, and was included in the provision above quoted.

On the 11th of July, 1853, the assignees paid upon the plaintiff's note $77.02, and made an indorsement thereof upon the note. This amount was the plaintiff's share of the dividend then made by the assignees from the proceeds of the assigned property.

The action was commenced on the 16th day of October, 1858, within six years from the time of making the payment of $77.02 by the assignees, and more than six years after the execution of the assignment.

The plaintiff therefore claims no benefit from the admission of the debt in the assignment, but insists that the

payment by the assignees takes the case out of the statute of limitations, and that he is entitled to recover the balance due upon his note.

The decisions of this court in *Winchell* v. *Hicks* (18 N. Y., 567), in *Van Keuren* v. *Parmele* (2 Comst., 527), and *Shoemaker* v. *Benedict* (1 Kern., 185), establish principles which will give great aid in disposing of the present case. In these cases, among others, the following propositions are established:

1. That payments by the debtor are evidence of an acknowledgment of the existence of the debt, and of a willingness and readiness to pay it.

2. That such payments must be made by the party who is sought to be charged, or by some person acting by his authority.

3. That the existence of a joint indebtedness does not constitute an authority for one joint debtor so to act in this respect for the other.

4. That where sureties requested their principal to make a payment, such payment bound them; but that they were not bound unless it was made by their request.

5. That upon the dissolution of a copartnership one partner has no such authority as will enable him, by a promise or a payment, to bind his copartner.

6. That whether such payment is made before or after the statute has attached, is immaterial.

Some light also can be obtained from a reference to the decisions upon the acts of assignees of insolvents and bankrupts in this country and in England. Among such cases are *Jackson* v. *Fairbanks* (2 H. Bl., 340), *Blanchard* v. *Wharton* (1 Barn. & Ald., 220), *Roscoe* v. *Hale* (7 Gray, 274), *Roosevelt* v. *Mack* (6 Johns. Ch., 292), and *Davis* v. *Edwards* (7 Exch., 22). The result of these cases at this time is this: that the payment by an assignee in bankruptcy or insolvency, of a part of the debt, does not take the case out of the statute of limitations.

These cases last cited, and the reasonings upon them, afford a safe ground of decision in the present case. They proceed

upon the basis that it would be unreasonable to construe payments by those who are not parties to the contract, nor under any personal obligation in respect to them, but are appointed to execute specific duties, as evidence of a willingness and intention by the original debtor, to pay the entire debt; that it would be a perversion of the intention of the parties, to make the simple execution of the trust by the assignees, the ground of a new assumption of the debt by the debtor.

A voluntary assignment, like an assignment in bankruptcy or under the insolvent laws, is made for a single specific purpose, by means of the property assigned, to pay the debts to which it is appropriated. It has no other object or intent, near or remote, and no other idea can be honestly entertained by the parties. Even for this purpose, the assignee can hardly be deemed the agent of the assignor, but certainly not beyond it. I do not see that he is, in any respect, more the agent of the assignor, than is an assignee in bankruptcy or insolvency. The one is nominated by the debtor alone, the other by the debtor and the creditors, but the mode of appointment does not decide the question of power or agency. He is neither authorized to speak or act for the assignor, nor is the wish or direction of that party, one which he is bound, or would be justified in obeying. His duty is pointed out by law, and he cannot protect himself in any deviation from it, by the instructions of the party. (*Dunham* v. *Waterman*, 17 N. Y., 9, 18.)

Reduced to words, the argument of the appellant is this: The assignor places his property in the hands of the assignee for the purpose of paying his debts, or a portion of them. The assignee, from the proceeds of the property, pays a creditor a fraction of his debt, and says to him, in words, "my assignor is willing to pay the residue of your debt, and on his behalf I promise you that he will do so." The assignor might well answer, "*non in haec federa veni.*" I have given no such authority and made no such contract. Can he, by implication and indirection, make that promise or give that assurance which he cannot do directly?

The acts of the assignee are beyond the control of the assignor. The assignor is not at liberty to accompany a payment, by the assignee, with a qualification or disclaimer, as when made by himself. Such payments are made without his knowledge or assent. In his own action, he may make an express disclaimer of an intention to make a further promise, and limit the effect of the payment to the payment itself, while, on the theory presented, the act of his alleged agent is much more comprehensive, and necessarily carries with it a future obligation. He has no power or opportunity to disclaim, and it would be fruitless to attempt it.

The cases show that a partner has no authority to make such promise to bind his copartner, that a joint debtor cannot bind his co-debtor, a principal his surety, unless payment is made by request of the surety, nor an assignee appointed in legal proceedings the original debtor, and all upon the idea that there is a want of authority to create the obligation. I think it would be a departure from these established principles, as well as from good sense, to hold that such authority was given by the voluntary assignment now under consideration. The position is sustained by no authority except the Special Term decision of *Barger* v. *Durvin* (22 Barb., 68), which I do not think was correctly decided. The judgment should be affirmed.

SMITH, J. The only question in this case is, whether the partial payment, made by the assignees, upon the note in suit, in pursuance of the authority to pay debts, conferred upon them by the assignment, is evidence from which the law will imply a new promise by the assignors to pay the remainder of the note, sufficient to take it out of the statute of limitations. I think it clearly is not. The assignees had no power to bind the assignors by such a promise, express or implied.

It is to be gathered from the case that the assignment was executed voluntarily, by debtors in embarrassed and failing circumstances. Their only object, in so doing, was to devote all the property then owned by them to the payment of their debts; and the direction to that effect did not carry with it

an authority to renew or extend debts. The assignees had not a general authority to settle and pay debts, at their discretion, nor even an unconditional authority to pay any particular debt, in full; but they had merely power to apply the avails of the assigned property to the payment of debts, in the order of preference expressed in the assignment. If they realized nothing, they could pay nothing. Whenever they converted all the assigned property into money, and applied it to the payment of debts, as provided in the assignment, their functions were performed. Can it be contended that they had authority, by an *express* promise, to bind the assignors to pay the balance of the debts remaining unpaid after applying all the assets in their hands? If not, a promise to that effect cannot be implied from their acts.

There is, really, no difference, in respect to the question under consideration, between a voluntary assignment by an insolvent debtor, and an assignment executed in statutory proceedings for the discharge of an insolvent from his debts, or in proceedings in bankruptcy. In the latter class of cases, it is well settled that neither the insertion of a debt in the schedule of creditors filed by the debtor, nor the payment of a dividend upon the debt by the assignee, will take it out of the statute. (6 Johns. Ch., 266; 7 Gray, 387.)

I am of opinion the judgment of the court below should be affirmed.

Judgment affirmed.