George H. Adams et al., as Executors, etc., Respondents, *v.* Stephen H. Olin et al., as Executors, etc., Appellants.

In the absence of a written acknowledgment or promise to take a case out of the Statute of Limitations, and where a payment is relied upon for that purpose, to operate as such it must appear that the alleged payment was a deliberate act of the debtor evidencing or accompanied by some evidence of an intention on his part to thereby acknowledge the existence of the debt.

Where it is uncertain whether the alleged payment was such in fact or was an independent transaction between the parties not connected with the old debt, no inference can properly be drawn therefrom of an admission thereby of the existence of that debt.

An account simply containing items of moneys received and paid is not "a mutual, open and current account where there have been reciprocal

demands between the parties" within the meaning of those words as used in the provision of the Statute of Limitations (Code Civ. Pro. § 386) which provides that in case of such an account the cause of action shall be deemed to have accrued from the time of the last item proved in the account.

In an action by the executors of Mrs. B. against the executors of her husband to recover an alleged balance which appeared as due her on the books of B., in an account under the name of his wife, the evidence to sustain the claim was simply the account, which was made up by the bookkeeper of B., not from instructions given by the latter, but from bills and checks directed to be drawn by him. The account commenced with entries crediting Mrs B with moneys received in 1864 by B. belonging to her. The account showed on the debit side an investment by B. of these moneys, and payment of bills for her; it showed changes in these investments and credits for interest or dividends received. In some cases where property bought with the moneys was sold, only part of the receipts were re-invested. The last item of credit was in 1876, and the account showed that in that year all the investments were converted into cash. The last item of debit was in 1879. The entry in the account of the balance claimed was under date of October, 1886. There was no claim of fraud, and it appeared and was found that whatever was done by B. was with the full knowledge and consent of his wife. *Held*, that the inference to be drawn from the account was that B. had, with the consent of his wife, appropriated the fund to his own use; and that the Statute of Limitations was a bar.

*Boughton* v. *Flint* (74 N Y. 76), distinguished.

There were entries on the book after the said balance in the account, of moneys received and of payments thereof, made by B., also three entries of payments by him of bills against his wife. *Held*, it could not be inferred that these entries were intended as payments upon or recognition of the stale indebtedness.

(Argued October 18, 1893; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 20, 1892, which affirmed a judgment in favor of plaintiffs entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George L. Rives* for appellants. This claim was barred by the Statute of Limitations as early as January, 1886. (*Mills* v. *Mills*, 115 N. Y. 80, 86; *Parks* v. *Satterthwaite*, 32 N. E.

Rep. 82; Code Civ. Pro. § 410; *In re Cole,* 34 Hun, 320; *Nostrand* v. *Ditmis,* 127 N. Y. 355; *Boughton* v. *Flint,* 74 id. 476; *Middleton* v. *Twombly,* 125 id. 520; *Thatcher* v. *H. C. Assn.,* 126 id. 507; *Roberts* v. *Ely,* 113 id. 128; *Sheldon* v. *Sheldon,* 133 id. 1.) The transactions of 1886 and 1888 did not revive this claim. (*Smith* v. *Ryan,* 66 id. 352; *Mills* v. *Davis,* 113 id. 243; *Crum* v. *Higold,* 32 Ill. App. 28; *Blair* v. *Lynch,* 105 N. Y. 636; *Nash* v. *Hodgson,* 6 DeG., M. & G. 474; *Camp* v. *Smith,* 45 N. Y. S. R. 331; affd., 136 N. Y. 187; 1 Wood on Lim. [2d ed.] 298; Banning on Lim. 70; *Mills* v. *Fowke,* 5 Bing. [N. C.] 455; *Kimball* v. *Brown,* 7 Wend. 322; *Gilbert* v. *Comstock,* 93 N. Y. 484; *In re Gardner,* 103 id. 533; *Thompson* v. *Brown,* 50 Mo. App. 314; *Ayer* v. *Hawkins,* 19 Vt. 26; *Burr* v. *Boulton,* 2 C. B. 476; *In re Kendrick,* 107 N. Y. 104; *Albro* v. *Figuero,* 60 id. 630.) Section 386 of the Code has no application. (2 Wood on Lim. [2d ed.] 716; *Green* v. *Disbrow,* 79 N. Y. 1; *Parker* v. *Schwartz,* 136 Mass. 30; *Crum* v. *Higold,* 32 Ill. App. 28.) Where a husband, with his wife's consent, sells property belonging to her and appropriates the proceeds, there is (in the absence of express agreement) no resulting liability to her. (*M. E. Church* v. *Jacques,* 3 Johns. Ch. 77; *Brooks* v. *Brooks,* 4 Redf. 314; *Jacobs* v. *Hesler,* 113 Mass. 157; *Hanson* v. *Manley,* 72 Iowa, 48; *Bromwell* v. *Bromwell,* 139 Ill. 424; *Tyson* v. *Tyson,* 54 Md. 35; *Jenkins* v. *Middletown,* 68 id. 540.) The evidence shows that this claim was settled by agreement between Mr. and Mrs. Barlow in their lifetime. (*Nay* v. *Curley,* 113 N. Y. 575; Greenl. on Ev. § 38; *Lake* v. *Tyson,* 6 N. Y. 461; *Sheldon* v. *Sheldon,* 133 id. 1; *Richmond* v. *Richmond,* 3 Alb. L. J. 352.) The provisions in Mr. Barlow's will in favor of his wife are intended as a satisfaction of all claims. (Story's Eq. Juris. §§ 1, 119, 121, 123; *Edmunds* v. *Law,* 3 K. & J. 318; 2 Redf. on Wills, 188, 192; *Rusling* v. *Rusling,* 42 N. J. Eq. 594.)

*Daniel G. Rollins* for respondents. The plaintiff's claim is not barred by the Statute of Limitations. (*Roberts* v. *Ely,*

113 N. Y. 128; *Mills* v. *Mills*, 115 id. 80; *Sheldon* v. *Sheldon*, 133 id. 1; *Boughton* v. *Flint*, 74 id. 476; *Payne* v. *Gardner*, 29 id. 461; Code Civ. Pro. § 1337; *Roux* v. *Brand*, 90 N. Y. 309, 312; *Hynes* v. *McDermott*, 91 id. 451, 464; *Roby* v. *A. C. Ins. Co.*, 120 id. 510–515; *Holcomb* v. *Campbell*, 118 id. 50, 51; *In re Thompson*, 121 id. 277, 279; *Green* v. *Ames*, 14 id. 225; *Chamberlain* v. *Cuyler*, 9 Wend. 126; *Tucker* v. *Ives*, 6 Cow. 193; *Edmondstone* v. *Thomson*, 15 Wend. 554; *Sickels* v. *Mather*, 20 id. 72; *Coster* v. *Murray*, 5 Johns. Ch. 522; *Catling* v. *Skoulding*, 6 T. R. 189; *Green* v. *Disbrow*, 79 N. Y. 1; *Chambers* v. *Marks*, 25 Penn. St. 296; *Norton* v. *Larco*, 30 Cal. 126.) The appellants have failed to establish their defense of payment. (*Fairchild* v. *Fairchild*, 64 N. Y. 471; *Donovan* v. *Clark*, 138 id. 631; *Wright* v. *Nostrand*, 94 id. 31; *Boyd* v. *De La Montaigne*, 73 id. 498; *Green* v. *Carlill*, L. R. [4 Ch. Div.] 822; *Linker* v. *Linker*, 32 N. J. Eq. 174; *Denning* v. *Williams*, 26 Conn. 226.)

GRAY, J. It is the claim of the plaintiffs, as the executors of Mrs. Barlow, that there was due to her from the estate of her husband, Samuel L. M. Barlow, whose executors the defendants are, a sum of $22,771.12; which appeared, in an account found in Mr. Barlow's books, under the name of "Alice C. Barlow," as a balance due her in October, 1888. As one of the defenses to the claim, the defendants urged that it was barred by the Statute of Limitations. I think that such a defense was fully made out, and that the judgment recovered below cannot stand. Mr. Barlow was a prominent lawyer of the city of New York, and predeceased his wife in July, 1889, by only a few months. After his decease she made a will, wherein she gave all of her property to their son, to the exclusion of certain infant children of their deceased daughter, who, under their grandfather's will, were entitled to an equal share of his estate. Of course, to the extent that the plaintiffs might make it appear that Mr. Barlow was indebted, at the time of his death, to his wife would the interest of his

daughter's children be diminished. The evidence to sustain the plaintiffs' claim consisted in entries, which were found in Mr. Barlow's books of account. In March, 1864, an account with his wife is opened by an entry to her credit of $19,862.50, which was followed in June by one of $4,000. The first of these entries represented the sale of certain securities, which had been given to Mrs. Barlow by a client of her husband, in grateful and further recognition of professional services rendered. The second of the entries represented the receipt from Mrs. Barlow of a check given to her by Mr. Townsend, her father. The account then shows upon the debit side an investment of these moneys by Mr. Barlow in real estate and in securities, and the payments of various bills. The account shows changes in these investments, and credits for sums received for interest or dividends.

On January 31st, 1877, the sum of $300, received upon the sale of his wife's pew, is credited. From that time until April 26th, 1886, a period of over nine years, the books do not disclose that Mr. Barlow was in the receipt of any further moneys belonging to his wife. Upon the debit side of this account, after the entry of the item of a payment upon December 15th, 1879, a period of over six years elapsed, within which Mr. Barlow does not appear to have credited himself with any payments or other transactions for his wife's account. At the latter date a cash balance apparently existed in her favor amounting to $23,187.42. Thus, depending upon what the books of account show, as the plaintiffs are obliged to do, in order to make out their allegation of a large amount of unsettled indebtedness from the husband to his wife, it would appear that any claim which she may have had against her husband, or his estate, for the balance appearing in her favor in December, 1879, would have been barred by the statute. This objection, however, the plaintiffs seek to overcome, either upon the ground that the receipt by Mr. Barlow of these moneys belonging to his wife was in the nature of a special deposit, and that the Statute of Limitations would not begin to run until after a demand; or upon the further ground that the

books evidence a mutual and running account between Mr. and Mrs. Barlow, with reciprocal demands, whereby the apparent indebtedness in December, 1879, was recognized and revived by further transactions appearing in the books of account in and after April, 1886. Upon one or the other of these grounds they were successful in the courts below.

With respect to the nature of the holding by Mr. Barlow of these moneys of his wife, it is very clear that it was not like a trust. The evidence is wholly insufficient to warrant such a conclusion, or to sustain the theory of a special deposit. It was found as a fact by the referee that all the transactions entered in the account with Mrs. Barlow, in relation to the purchase and sale of securities, the collection of moneys and the application thereof, were with her full knowledge and consent. It was formally admitted to be true, and so found as a fact, that they lived together with affection and in entire harmony, and that Mr. Barlow did not commit any fraud in relation to Mrs. Barlow's property, nor any breach of trust, and that "he dealt with her property at all times with her knowledge and consent." Turning then to the evidence of Mr. Barlow's transactions, from the account referred to, we fail to find any *indicia* of the existence of a trust; or that there had been a special deposit confided to him for any particular time or purpose. There is no evidence of any original agreement, or of any request, concerning the first receipt of Mrs. Barlow's moneys in 1864. We only know that they were paid to her husband. We do not find in this account any such continuous investment, or such custody evidenced, of the moneys, as might lead us to suppose that the fund was kept separate and distinct; as would be the case if it were regarded as held upon a trust, or as a special deposit. To the contrary, while in the commencement a house and certain securities appear to have been bought with the moneys received, they were, within two years, sold and only part of the proceeds re-invested. Down through this account, from 1866 to 1876, the debit side shows a realization upon securities, until in the latter year the account shows every form of

investment to have been converted into cash. There was nothing after 1876 but a bookkeeper's entry of a cash balance of account in Mrs. Barlow's favor, to show her husband's accountability. What is the inference to be drawn? Obviously, that he had appropriated the proceeds of sales of lands and securities to his own use. Of course, there is no question of any fraud committed. The findings referred to preclude any such inference and prove that whatever he had done, had been with her full knowledge and consent.

It seems that these personal books of account were not written in by Mr. Barlow himself, but by a bookkeeper; who made up his entries from bills and from the checks directed to be drawn by him, rather than from any instructions given by Mr. Barlow. So that these books furnish evidence of a very unsatisfactory nature, when looked to for any such purpose as the plaintiffs have in mind. The method of their keeping evidences the technical work of the professional bookkeeper; but there is nothing to prove that Mr. Barlow superintended the bookkeeping part, or interested himself in his clerk's methods. While I said that the obvious inference to be drawn from these accounts was that Mr. Barlow had appropriated to his own uses the fund therein stated, such an inference in nowise serves to preclude us from presuming that, at a subsequent time during the lapse of years after 1876, he may have made some perfectly satisfactory settlement or arrangement with his wife with respect to any existing indebtedness. In view of the knowledge she had as to all he did with her property, and of the affection and harmony in which they had always lived together, such a presumption may well underlie the financial transactions of their lifetime and justify the interposition of the statutory bar against the maintenance of this claim by her executors after their decease.

The limitation of six years provided for by the Code (Sec. 382) applies to such a case of liability, and it began to run from the time when the moneys were received. Section 410 of the present Code, which provides for a case where a demand is necessary, does not affect it. Mr. Barlow is not shown to

have received his wife's property in any capacity of a fiduciary nature. To use the language in *Mills* v. *Mills* (115 N. Y. 80), "he received money belonging to another, and had become a debtor for the same, and he was in no other sense a trustee than every one is who receives money to and for the use of another." At most, there was an implied trust raised by the law, which was governed by the ordinary rules of limitation. Even if there was anything, from which we could presume that Mr. Barlow had received his wife's money in some fiduciary capacity, her actual knowledge of the facts would except the case from the suspension of the limitation provided for in the first subdivision of section 410. By the second subdivision of that section, it is only when there was "a deposit of money not to be repaid at a fixed time, but only upon a special demand, or a delivery of personal property, not to be returned * * * at a fixed time," that the time must be computed from the demand. This was not such a case as is there contemplated, for we are without any evidence that there was any agreement, or undertaking, with respect to a time of re-payment or return of the moneys or the property. The clear construction of that provision of the Code is that, in the absence of any agreement or understanding as to a re-payment of moneys deposited, or a return of property delivered, the lapse of six years operates to defeat any claim. In the case of *Boughton* v. *Flint* (74 N. Y. 476), which the plaintiffs' counsel relies upon, the opinion informs us of the important fact that the wife's moneys were kept by the husband at her request. RAPALLO, J., says there : "He was not in default for not paying it over until she should demand it, as he was requested to keep it until then." (P. 482.) Besides, the case of *Boughton* v. *Flint* arose prior to the present Code of Civil Procedure; the provisions of which explain and limit the cases where a demand is made necessary. Here, Mr. Barlow had funds of his wife, to which, if it was not his duty to pay them over at once, she was equitably entitled, and concerning which she had full knowledge. A legal liability existed from the commencement, and, as such, it was subject for its enforcement to the

limitation of six years, within the principles of many decisions. (See *Roberts* v. *Ely*, 113 N. Y. 128; *Mills* v. *Mills*, *supra*, and *Sheldon* v. *Sheldon*, 133 N. Y. 1.)

But it is insisted by counsel for the respondents that there was such "a mutual, open and current account, where there were reciprocal demands between the parties," as, within the meaning of section 386 of the present Code, to postpone the running of the Statute of Limitations against a cause of action, until the time of the last item proved in the account. Their argument has reference to the subsequent transactions appearing in the account in the years 1886 and 1888, and we are asked, in effect, to hold that they amounted to such a recognition of the indebtedness previously standing on the books in 1879, as to revive a claim for its recovery.

These transactions were few in number. In March, 1886, Mrs. Barlow was stricken with paralysis, and, during her illness, there were paid to Mr. Barlow certain sums of money amounting to $2,540.07; of which $2,476.07 were due to his wife from her father's estate, and $64 were due to her for a dividend on some stock. They were entered by Mr. Barlow's bookkeeper to her credit in the old account upon the books. Subsequently, he made payments at her request, amounting to $1,319.20. Thereafter, in May, an account was made up for Mrs. Barlow, showing a balance due to her, on account of these particular transactions, amounting to $1,220.87, which sum was thereupon paid over to her by Mr. Barlow. In this connection, considerable light is thrown upon the matter by some entries in Mrs. Barlow's check book. The receipt of these two sums of money is first noted, and then follow the items of payments which had been made at her request. Against the balance, remaining after deducting the payments, are the words " Bal. to credit of Mrs. B., $1,220.87, and check for same deposited in Madison Square Bank May 19th." In the books of Mr. Barlow the bookkeeper had carried forward the old balance of $23,187.42, and, by crediting the amounts just referred to, he had thereby increased the apparent indebtedness of Mr. Barlow to his wife. But the entries in

Mrs. Barlow's own book tend absolutely, in my opinion, to rebut any presumption which the method of bookkeeping might give rise to.  Whether Mr. Barlow directed the entries as they were made, we are not informed.  At most, we know they were his books, but wholly kept by the clerk, and we should be slow to presume that carrying an old and stale balance forward and writing up to it these subsequent items were acts, of themselves, evidencing the recognition of an apparent book indebtedness of past years.  In addition to these entries, there were charged to Mrs. Barlow three items of payments, amounting to $456.50.  One was to Mrs. Barlow's nurse, one was to a blacksmith and one was to the Madison Square Bank. These are without explanation, other than as to their nature ; but there is no evidence that these payments were intended by Mr. Barlow as charges against his wife, and the bookkeeper, who made them, was not able to testify that he had been directed to charge them as he did.  It is quite as presumable that he charged them up in this way, in this particular account in Mr. Barlow's books, without directions and as a mere bookkeeping method of his own, and that Mr. Barlow never intended them to re-open an account in that way, as that they were payments upon account of some existing indebtedness. In 1888 there was one other entry of the receipt of $100, proceeding from the sale of some stocks; but on the debit side this item is balanced by the payment of that precise sum, two days later, to Mrs. Barlow.  The entries in 1888, therefore, furnish no basis for any presumption of liability.  Can we say, then, that those particular unbalanced entries of payments in 1886, amounting to $456.50, are to be deemed payments upon account of the stale indebtedness of $23,187.42?  I think the proposition is quite too monstrous to be entertained.  It is at war with all the probabilities of the case, and no such inference, in my judgment, could be drawn from the facts.  In order that a payment shall operate to revive a debt barred by limitation of time, it should appear, in some reasonably intelligible way, to have been made on account of the previous debt ; and, in the absence of evidence tending to prove that

fact, we should refuse to draw an inference from a condition of things, which is as consistent with one theory as with another. If it is uncertain, or ambiguous, whether a payment was made as an independent transaction between the parties, and not connected with by-gone transactions; or whether it was made on account of some precedent and lapsed debt, no inference should be drawn of an admission thereby of the old debt; for, to operate as such an admission, the payment must have been a deliberate act of the debtor, evidencing, or accompanied by some evidence of, an intention to thereby acknowledge to his creditor the existence of the greater indebtedness. Without the written evidence of an acknowledgment of the debt, which the statute requires, a payment, to be effectual as an acknowledgment, because a recognition of an indebtedness, must enable us to infer, from the circumstances, if without any other evidence, the debtor's intent that it shall be so taken by his creditor. Shall we do so, when the entry of the payment in an old book account is the sole evidence and that is made, not by the debtor, but by a clerk and, so far as we are informed, unknown to the creditor? That would be going further than I think any case authorizes, or any principle of law would justify. There is nothing in this case to show that Mr. Barlow had any such intention, as is ascribed to him; for we have only these bare items in an account, in the handwriting of a third person; whose authority, or instruction, to enter them in the way he did is not proved. While, against the idea, we have much that militates in favor of the belief that the transactions during these years of 1886 and 1888 were not associated with the precedent transactions and were fully accounted for. We see an instance of that in the pages of Mrs. Barlow's check book referred to and a further instance in a transaction on November 8th, 1886, and stated in a finding of the referee. On that date Mr. Barlow gave to his wife the sum of $500; which she stated in her check book as follows, viz.: "Due from S. L. M. B. $300, borrowed from S. L. M. B. $200." As, according to the plaintiffs' theory, he must have then owed her over $20,000 in cash, is

it conceivable that such a statement could be made with respect to the $500 received ?   I think not and that it is sufficient, taken in connection with other evidence of like nature, utterly to refute the assertion that Mrs. Barlow had any legal claim upon her husband, growing out of the transactions antedating 1879.

Section 386 of the Code is of no aid to the plaintiffs.   The evidence does not disclose any mutual account showing reciprocal demands.   There was a current account kept by the husband of his transactions with his wife's money ; showing what amounts went to her credit and what payments were made therefrom.   Of course the payments, which, in the methods of bookkeeping, were, in this account, charged to her and credited to him, would not constitute what are understood to be reciprocal demands.   The account here is not like the tradesmen's account in *Green* v. *Disbrow* (79 N. Y. 1), a case which may serve to exemplify the necessary distinction.   In my judgment, a careful consideration of this record must lead to the strong conviction that Mr. and Mrs. Barlow, between themselves, had settled, in some satisfactory way, all questions growing out of the transactions alluded to ; but, if she may be deemed to have had a claim, then her cause of action was gone, through the operation of the statutory provisions which fix a limitation of time for the commencement of actions upon obligations.

The order and judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

All concur, except MAYNARD, J., dissenting.

Order and judgment reversed.