tiff has a prior right, that the defendant has assumed a style and title which is substantially that of the plaintiff, that the plaintiff's business, or the purposes for which it was organized, will be injuriously affected by the defendant continuing to use the title by which it was incorporated, and there has been no laches which would operate to prevent the plaintiff from receiving the aid of the court.

We think, therefore, that the injunction was properly granted, and the order should be affirmed, with $10 costs and disbursements. All concur.

(47 App. Div. 448.)

In re FARMERS' LOAN & TRUST CO. et al.

(Supreme Court, Appellate Division, Second Department. January 23, 1900.)

1. HUSBAND AND WIFE—ANTENUPTIAL SETTLEMENT—GIFTS—EVIDENCE.

A witness, who was on bad terms with claimant, and induced by her to testify in her suit to enforce a trust on certain property claimed as a portion of her husband's estate by her paying his litigated claim against the estate from her separate property, testified that previous to his marriage to claimant, to whom he was then engaged, decedent took from a trust company 50 United States bonds, and directed the secretary to send them to his address, in P. (which testimony was corroborated by the record of the trust company), and that on his return from his wedding trip he delivered the bonds to witness, and requested him to wrap them up, and indorse them as the property of claimant; that subsequently decedent, desiring a more remunerative investment, proposed to sell the bonds, and invest the money in other bonds, and decedent's check book which he used at the time showed entries on the stubs tending to prove a transfer of the United States bonds and the purchase of others; that witness received the bonds purchased, took them to decedent, who instructed him to wrap them up, and indorse them as the property of claimant, which he did; and, on claimant subsequently requesting a settlement of her bond account, decedent instructed witness to make up the account, which he saw decedent hand claimant with the statement, "Here is the bond account you have been asking for." The account was introduced in evidence, and contained an entry showing that the bonds were in the hands of decedent, and belonged to claimant; and in decedent's safe, after his death, were different statements containing private memoranda, in his handwriting, setting forth his assets and liabilities and those of his wife, in which he had debited himself with such bonds, one of which described them as bonds "owned by her before her marriage to me, and which she loaned to me." *Held* that, since the testimony of such witness was corroborated by written declarations and other written memoranda, it was sufficient to show an antenuptial gift to claimant of the United States bonds, and that she returned them to him for safe-keeping and investment.

2. SAME—TRUSTS—CONVERSION BY TRUSTEE—LIMITATIONS.

Where a husband gave his wife certain United States bonds, which she thereafter returned to him for safe-keeping, etc., and he thereafter made several declarations that such bonds, and others exchanged therefor, were her property, and held by him for her benefit, the fact that she subsequently permitted him "to use the bonds," and that he had thereafter converted them to his own use, did not change his relation of trustee regarding them to a mere debtor, so as to prevent the wife from recovering their value after the expiration of six years from the date of such conversion.

3. SAME—PROPERTY CONVEYED TO WIFE—STIPULATION TO RECONVEY—EFFECT.

Where, in an action by a wife against her husband's estate to recover for bonds which he held in trust for her, and which he wrongfully converted, it appeared that property belonging to the husband, of nearly equal value to the bonds, stood in her name at the time of his death, and she filed a

stipulation offering to transfer such property to the estate in the event of the allowance of her claim, she was entitled to recover the value of the bonds, notwithstanding she held title to such property.

Appeal from surrogate's court, Westchester county.

Judicial accounting by the Farmers' Loan & Trust Company and Matilda E. Starbuck, as executors of the estate of William H. Starbuck, deceased. From a surrogate's decree rejecting Matilda E. Starbuck's claim against the estate, she appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

William N. Dykman (Artemas H. Holmes, on the brief), for appellant.

Edgar K. Brown (Henry Smith, on the brief), for respondent.

HATCH, J. This appeal coming on to be heard, the appellant moved, under section 2586 of the Code of Civil Procedure, for a reference to take further proof upon the subject-matter involved in the appeal, and, this motion having been granted, the appeal is now heard not only upon the record upon which the learned surrogate acted, but also upon the report of the referee appointed to take the testimony. This court is invested with authority, even though no additional proof had been taken, to make an independent determination upon the facts and the law. In re Rogers, 10 App. Div. 593, 42 N. Y. Supp. 133. Having, in substance, made a new case, the necessity is imposed upon this court of making an original determination. Upon the proof as it now appears before this court it must be deemed to be established that the deceased, at the time of his marriage to the claimant, presented to her as a wedding present 50 United States 4 per cent. bonds of $1,000 each. The details of this transaction are very fully set out in the testimony of Sidney Starbuck, a brother of the deceased. The testimony of this witness is the subject of just criticism in view of the fact that the relation between himself and the claimant was one of estrangement, and that he had been engaged in an attempt to enforce a claim against his brother's estate, which had passed through considerable vicissitude in litigation, but in which he had been successful in obtaining judgment, from which an appeal had been taken. The subject-matter was compromised by the claimant paying him from her personal estate the sum of $8,000 in extinguishment of the claim upon his consent to testify in this proceeding. This arrangement so far discredited his testimony as to justify this court in rejecting it except as it be consistent with known facts and corroborated by the written declarations of the deceased. Interpreted, however, pursuant to this rigid rule, it harmonizes so completely with undisputed facts as to entitle it to credence. He testified that the deceased took from the Farmers' Loan & Trust Company the 50 United States bonds, and directed the secretary of that institution to send them by express to his address at Philadelphia; and this fact is corroborated by the record of the trust company that such bonds were in fact so sent. The deceased was then engaged to be married to the claimant, who resided at Chester, a short distance from Philadel-

phia. While there is no proof, aside from the testimony of this witness, that the deceased in fact took such bonds from the express office in Philadelphia, and delivered them to his wife, yet it appears that upon his return from his wedding trip he delivered to the witness these bonds, and requested him to wrap them up, and indorse thereon, "Fifty One Thousand U. S. Government Bonds, the Property of Matilda E. Starbuck," which the witness states he did, and deposited them in the safe-deposit vault of the deceased. He further testified that subsequent to this time the deceased informed him that these bonds were not drawing a sufficient rate of interest, and that he believed Northern Pacific 6's to be a good and safe investment, and that he proposed to sell the government bonds, and invest the money in the Northern Pacific 6's. In connection with this testimony, there appeared in the check book of the deceased which he had in use at that time two entries on the stub,—one reading, "January 10, Deposit Loan from Farmers' Loan and Trust Company on 50 U. S. 4's $50,000;" and the other reading, "Jan. 10, Drexel, Morgan & Co., Balance for 50 One Thousand Dollar Northern Pacific Bonds, Property of Matilda E. Starbuck, $39,845.68." It further appeared from the testimony that it required the proceeds of the loan realized on the United States bonds to make good the account against which the check attached to the stub was drawn. In this connection the witness testified that he delivered the check to Drexel, Morgan & Co., from whom the Northern Pacific bonds were purchased, received the bonds, and took them to the deceased, who instructed him to wrap them up, and indorse upon the wrapper, "50 One Thousand Dollar Northern Pacific 6% Bonds, Property of Matilda E. Starbuck," which the witness said he did, and deposited the same in the deposit vault of the defendant. The witness further testified that subsequent to this time, and in the presence of Mr. and Mrs. Starbuck, she requested a statement of her bond account, and the deceased thereupon directed the witness to make up the account, which he subsequently did, and that he saw the deceased hand the book containing the account which the witness had made up to Mrs. Starbuck, with the statement, "Here is the bond account that you have been asking for." This account was introduced in evidence, and contained the following entry, together with others: "In the hands of W. H. Starbuck, belonging to Matilda E. Starbuck, $50,000 Northern Pacific first mortgage bonds, $50,000; $3,000 U. S. 4% bonds, $3,000." Upon the death of the deceased there was found in his office safe his will and his private papers, among which were 20 different statements containing private memoranda in the handwriting of the deceased, in which are set forth a statement of his own assets and liabilities, and also the assets and liabilities of the claimant, his wife. The first of these memoranda is dated October 26, 1885, and the last December 6, 1894. In the first appears this statement: "Due Mrs. Tillie E. Starbuck, 50 Northern Pacific bonds, and interest for several years, about $65,000." In the statement under date of April 12, 1893, appears, under the heading, "Property of Matilda E. Starbuck": "Debt due Matilda E. Starbuck by W. H. Starbuck, $65,000, and interest from 1882; the same being

proceeds of 50 Northern Pacific first mortgage bonds owned by her before her marriage to me, and which she lent to me." In the last statement, under date of December 6, 1894, under the heading, "Liabilities of W. H. Starbuck," appears the entry: "Tillie E. Starbuck, $60,000." We are of opinion that this testimony satisfactorily establishes that Mr. Starbuck made an antenuptial present to his wife of the 50 $1,000 United States bonds, and that she subsequently returned these bonds to him for safe-keeping, and for investment by him in such form as would seem advisable, in the exercise of his judgment; the purpose undoubtedly being to keep them safe for her, and to change the form of the investment as, from time to time, his judgment might suggest, in order to procure therefrom the largest income consistent with safety. His repeated written declarations and the explanatory testimony of the witness seem to warrant this conclusion. Govin v. De Miranda, 140 N. Y. 474, 35 N. E. 626; Gallagher v. Brewster, 153 N. Y. 364, 47 N. E. 450. Upon the hearing before the learned surrogate Mrs. Starbuck was called as a witness, and was permitted to testify that 50 bonds of the Northern Pacific Railway Company, $1,000 each, were given to her as a wedding present, and therefrom the surrogate deduced the fact to be, when taken in connection with the declarations of the deceased, that, while it was intended by the latter to make such gift, yet that it was never consummated by a delivery of the bonds; and this view found some considerable support in the fact that it nowhere appears, aside from Mrs. Starbuck's testimony, that the deceased was in possession of such bonds until some time subsequent to his marriage; and that, while he declared them to be the property of the claimant, yet such declaration rested in intention merely, and was not sufficient in establishing a consummated gift. It is by no means unnatural that the claimant should have been mistaken in her testimony as to the bonds. She had then had before her since 1882 the account delivered to her by the deceased, in which were recited the 50 Northern Pacific bonds; and in view of the fact, now clearly appearing, that the United States bonds were the bonds presented, and subsequently exchanged for the Northern Pacific bonds, the mistake appears most natural. Indeed, Mr. Starbuck states in the memoranda the same thing, although it is evident that they did not constitute the wedding present. We have little doubt that, had the surrogate had before him the full explanation, he would have reached the same conclusion which this court has reached.

But, in addition, the learned surrogate reached the conclusion that, even though it be admitted that the bonds were the property of the claimant, yet that she subsequently authorized their sale by the deceased, and permitted him to take the proceeds, and use the same in his business. Therefrom the surrogate deduces the conclusion that this transaction constituted the relation of debtor and creditor between Mr. and Mrs. Starbuck, and that, as the six-years statute of limitations had run since the conversion of bonds into money, she was barred from asserting any claim against his estate. It cannot, we think, be successfully disputed but that, when the bonds were first delivered to Mr. Starbuck, such delivery constituted

him a depositary of the bonds, and made him a trustee of the same. His declaration in respect thereto constituted a declaration of trust, and this relation, we think, continued through all the changes which were made. It is true that the executors, when stating the claim made by Mrs. Starbuck, denominate it a debt. It is also true that counsel for the claimant urged that the claim asserted was one of debt. We do not, however, think the claimant should be conclusively bound by these declarations. All of the facts respecting the claim and how it arose clearly appear; and in the fourth statement made by the deceased he states, under the head of liabilities: "Tillie E. Starbuck, 50 Northern Pacific first mortgage bonds belonging to her, and used by me with her consent, interest on same, about $65,000." All of the statements which follow use the same language, until the one under date of April 26, 1892, which contains the statement: "Debt due to Matilda E. Starbuck by W. H. Starbuck, being proceeds of 50 Northern Pacific bonds, owned by her before her marriage to me, and sold by me in 1882. Amount of principal, $65,000; interest at 6% to date on same." The subsequent statements are in substantially the same language as the last. It thus clearly appears that the consent of the claimant in the first instance was to use the bonds. Such is its language as declared by the deceased, and nothing is therein stated which tends to show that she had loaned him the proceeds of the bonds. The subsequent statements speak of it as a debt, but the source from which the debt arose is given, and it is clearly evident that the transaction is the same. Under such circumstances we think no case has gone so far as to hold that the character of the relation was changed. In its inception it was a trust, and we think it should be so held to continue, in the absence of evidence conclusively establishing that the trust relation ceased, and that of debtor and creditor was substituted. The authorities are abundant in support of this view. Payne v. Gardiner, 29 N. Y. 146; Boughton v. Flint, 74 N. Y. 475; Dorman v. Gannon, 4 App. Div. 458, 38 N. Y. Supp. 659. This rule is recognized in Adams v. Olin, 140 N. Y. 150, 35 N. E. 448, and it is evident from the discussion in the latter case that, had the court been dealing with a state of facts such as is presented by this record, its reasoning would have compelled the court to hold that a trust relation was established, and that of debtor and creditor excluded. We conclude, therefore, that the deceased, under the arrangement which he declared was made with the claimant, was a trustee in the beginning, and so remained, not only as to the bonds themselves, but as to their proceeds, even though he changed them into money, and used the money in his business. We think, therefore, that the conclusion reached by the learned surrogate upon this question may not be sustained. In the statement under date of December 6, 1894, among the assets stated as belonging to W. H. Starbuck appears: "Property at [Greenwich?], 12 acres, belonging to W. H. Starbuck, and standing in the name of Matilda E. Starbuck, for which I have been offered $55,000." The item stating the liability of Starbuck to the claimant in this statement reads: "Tillie E. Starbuck, $60,000." From this it appears that at this time, in some manner, the liability

of the deceased to the claimant had been decreased to the sum of $60,000, and that at that time she held title to property belonging to him of the value of $55,000. It was suggested upon the argument that, inasmuch as the claimant held property of the deceased in an amount nearly equal to the amount of his liability to her, the former might be regarded as an offset to the latter debt. Such would appear to be the clear equities as between the deceased and the claimant, and ought to be held to extinguish the claim of the plaintiff pro tanto. It was thereupon stated by the counsel that the claimant was willing to stipulate to transfer the property therein mentioned, to which she held title, in the event of the allowance of her claim appearing to be due by the latter statement; and since the argument the claimant has filed such stipulation, and the same now forms a part of the record of this case. We have therefore reached the conclusion, based upon the whole case, including the stipulation, that the decree of the surrogate should be reversed, and the said claim be allowed, upon filing the stipulation above referred to in the surrogate's court; the same to be enforced upon the final accounting in this proceeding.

It follows that the decree of the surrogate should be reversed, and the proceeding remitted to the surrogate's court for final determination. All concur, except HIRSCHBERG, J., taking no part.