### BROOKLYN BANK v. BARNABY.

(Supreme Court, Trial Term, Kings County. December 10, 1907.)

1. LIMITATION OF ACTIONS—BAR OF STATUTE—PAYMENT.

Code Civ. Proc. § 395, declares that an acknowledgment or promise contained in a writing, signed by the party to be charged thereby, is the only competent evidence of a new or continuing contract to take the case out of the statute, but that the section does not alter the effect of a payment of principal or interest. *Held*, that a payment on a note in order to bar the statute must be the deliberate, voluntary act of the debtor, or his act evidencing an intent to acknowledge the existence of the debt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 631, 632.]

2. SAME—PAYMENT BY AGENT—CASHIER OF BANK.

Where a note, secured by collateral, gave the payee bank express authority to sell the collateral and apply the proceeds to the payment of the note, and pursuant to such authority the cashier sold certain of the col-

lateral and indorsed the proceeds on the note, informing the maker there-
of by letter, to which he did not reply, such payment was made by the
cashier acting as the maker's agent, and was therefore sufficient to bar
limitations.

Action by the Brooklyn Bank against Frank A. Barnaby on a note
made by defendant February 12, 1894, to plaintiff's order for $68,000,
with interest payable on demand. The action was commenced Septem-
ber 12, 1906, to which defendant pleaded limitations. Judgment for
plaintiff.

Prior to August 24, 1899, the defendant made certain payments on account
of the note, which are not in dispute. On that day plaintiff alleges a pay-
ment of $562.50, and another payment on December 10, 1901, on account of
principal, $1,437.50. Plaintiff also alleges a payment by defendant on ac-
count of interest on July 30, 1895, of $500, and another interest payment on
December 10, 1901, of $337.50. Plaintiff alleges that there is a balance due
of $13,565. The defendant denies the four payments specifically referred to.
The note in question is in the following form:

"$68,000.                                    Brooklyn, N. Y., Feby. 12th, 1894.

"On demand, after date I promise to pay to the Brooklyn Bank of Brook-
lyn, or order, at the banking house of said bank, in funds current at the New
York clearing house ——— dollars with interest at the rate of ——— per
cent. per annum, for value received, having deposited with said bank as col-
lateral security 650 Brooklyn City R. R. Co.; 150 Lewis & Fowler Mfg. Co.;
30 Lewis & Fowler Girder Rail Co.; 2,000 Knickerbocker Bonds; 75 Knicker-
bocker Stock; 20 Brooklyn R. E. Exchange; 97 Lewis & Fowler Mfg. Co.; 297
Long Island Traction; 200 E. W. Bliss Co. Com.; 170 N. Y. & E. R. Stock;
100 E. W. Bliss Pfg.; 20 Eighth Ward Bank; 25 Eagle Warehouse; 100 B. C.
R. R. Stock; 1,128 Lewis & Fowler Mfg. Co. Stock—which hereby authorize
said bank, or its president or cashier, to sell without notice, at the board of
brokers, or at public or private sale, at the option of said bank, or its president
or cashier, in case of the nonperformance of this promise, applying the net
proceeds to the payment of this note, including interest, and accounting to
for the surplus, if any. In case of deficiency ——— promise to pay to said
bank the amount thereof forthwith after such sale, with legal interest; and
it is hereby agreed and understood that if recourse is had to the collaterals,
any excess of collaterals upon this note shall be applicable to any other note
or claim held by said bank against ——— and in case of any exchange of, or
addition to the collaterals above named, the provisions of this note shall ex-
tend to such new or additional collaterals. The margin of collaterals on this
note to be kept at not less than 20 per cent., or in default thereof the same
to be payable on demand.                                    F. A. Barnaby."

As to the payments in dispute, it appears that on August 24, 1899, the de-
fendant wrote a letter to plaintiff, requesting the delivery of 75 shares of the
stock of the Knickerbocker Steamboat Company, deposited as collateral, and
requested plaintiff to "accept in place thereof $562.50." The letter was signed
by the defendant, and the plaintiff's cashier delivered the stock to the de-
fendant, and credited the money received on account of the loan represented
by the note, indorsing the payment upon the note. On December 10, 1901,
the plaintiff sold at private sale 25 shares of Eagle Warehouse stock, part of
the collateral deposited, receiving therefor $71 a share, in all $1,437.50, and
credited the proceeds on the loan represented by the note, indorsing there-
on: "December 10th, 1901. Rec'd a/c within loan, fourteen hundred and
thirty seven $50/100$ dollars from sale of 25 shares Eagle Warehouse Co.
Thomas M. Halsey, Cashier." The next day the cashier wrote and mailed
to defendant a letter informing him of the sale of the collateral and the ap-
plication of the proceeds. The defendant made no reply.

The defendant offered no evidence, but insists that the transaction of De-
cember 10, 1901, was not a payment sufficient to bar operation of the statute
of limitations. A jury was waived, both parties moving for the direction of a
verdict.

Dykman & Kuhn and John J. Kuhn, for plaintiff.

Myers & Goldsmith, Emanuel J. Myers, and Gordon S. P. Kleeberg, for defendant.

KELLY, J. To bar the statute of limitations there must be a deliberate voluntary act of the debtor or his agent, evidencing an intention on his part to acknowledge the existence of the debt. Section 382, Code Civ. Proc., provides that an action upon a contract, obligation, or liability, express or implied, must be commenced within six years after the cause of action has accrued. Section 395 of the Code provides:

"An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract, whereby to take a case out of the operation of this title. But this section does not alter the effect of a payment of principal or interest."

The defendant relies on a line of decisions to the effect that an involuntary payment, or a payment by operation of law, as through levy and sale under execution or by foreclosure and the like, is not sufficient to bar the statute. This may be so, but the payment in this case on December 10, 1901, was not such a payment. It was a payment made by defendant through his agent, the cashier, who was expressly authorized in writing signed by defendant to sell the collateral, without notice, at public or private sale, at his option, applying the proceeds to the payment of the note. And he was notified of the transaction, and in no way objected to the act of the cashier. Judge Rapallo says, in Harper v. Fairley, 53 N. Y. 442, cited by defendant:

"The reasoning of such cases as McLaren v. McMartin, 36 N. Y. 88, and Pickett v. Leonard, 34 N. Y. 175, determines that a part payment, whether made before or after the debt is barred by the statute, does not revive the contract, unless made by the debtor himself or by some one having authority to make a new promise on his behalf for the residue."

And to the same effect Adams v. Olin, 140 N. Y. 150, 35 N. E. 448; Crow v. Gleason, 141 N. Y. 489, 36 N. E. 497. In the case at bar the payment was made by the cashier acting as the agent of the defendant, under the express authority contained in the collateral note, a form of security used every day in the business world, and as to the legal effect of which there is, in my opinion, no question.

I therefore direct a verdict for the plaintiff for $13,565, the balance due upon the note, with interest to be computed.