In the Matter of the Judicial Settlement of the Accounts of ANNA M. VOLK, as Administratrix, etc., of WILLIAM F. PAPPALAU, Deceased.

HARRY PAPPALAU, Claimant, Appellant; ANNA M. VOLK, as Administratrix, etc., of WILLIAM F. PAPPALAU, Deceased, Respondent.

Third Department, April 30, 1941.

*Borden H. Mills,* for the appellant.

*DeGraff & Foy* [*John T. DeGraff* and *William F. Conway* of counsel], for the respondent.

SCHENCK, J. The decedent, William F. Pappalau, died May 19, 1939, leaving no assets except his interest in the estate of his deceased father. Harry Pappalau, decedent's brother, has filed a claim against decedent's estate, which claim was rejected by the administratrix. At the time of his death decedent and his brothers Harry and Edward were conducting a business, each having an equal interest therein.

The claim herein is for board for deceased and his son from May 1, 1919, to May 1, 1928, at ten dollars per week, and for board for deceased alone from May 1, 1928, to May 19, 1939, at seven dollars and fifty cents per week. Cash credits are conceded by claimant in the amount of $6,150. The balance claimed, including forty dollars for hospital bills and an advance on a finance company loan, is $2,470. There was an issue of fact and the court found that the evidence produced by claimant is insufficient to establish the existence of this claim. Moreover, claimant has failed to establish that any board or room service was rendered deceased and his son and has wholly failed to show the value thereof.

Appellant asserts that the surrogate erred in refusing to admit in evidence claimant's Exhibit 1 for identification, which is apparently a note book and shows certain entries. There is no evidence before us to indicate that this book is a record made in the usual course of business bringing the book within the provisions of the Civil Practice Act (§ 374-a) and I am inclined to the belief that the surrogate properly rejected it as evidence. The statute does not permit the receipt in evidence of entries based upon voluntary hearsay statements made by third parties not engaged in the business or under any duties and relation thereto. It does not provide for the admission in evidence of a mere private memorandum. (*Mayor, etc., of N. Y.* v. *Second Avenue R. R. Co.*, 102 N. Y. 572, at p. 581; *Johnson* v. *Lutz*, 253 id. 124; *Matter of Roge* v. *Valentine*, 280 id. 268.)

But aside from these factual considerations, the claim is barred by the Statute of Limitations and was not revived by alleged part payments on account of a pre-existing debt.

The claimant's theory seems to be that this was a running account and that payments constituting the aforesaid " cash credits " have successively tolled the Statute of Limitations. The last payment was alleged to have been made on November 24, 1937. This was in the amount of $100. The payment next preceding it was in 1932 and was in the sum of fifty dollars.

At the time of the payment in 1937 claimant's wife, the only person to witness the transaction, testified: " Q. William [deceased] said, ' here is the hundred dollars I owed you for my back board.'

A. Yes, sir.  Q. And Harry [claimant] took it?  A. Yes, sir.  Q. That is all the conversation?  A. Yes, sir."

In other words, claimant's evidence shows that deceased in 1937 acknowledged and paid $100 for "back board."  Nothing was said about a "running account."  Payment was offered and accepted in language to indicate that it was full payment to date. In order to hold that a payment is on account so as to toll the Statute of Limitations, the payment must unequivocally be under circumstances to indicate it to be on account of a past debt, with intent to make further future payments.  (*Brooklyn Bank* v. *Barnaby*, 197 N. Y. 210; *Scott* v. *Palmer*, 246 App. Div. 379.) Again, in *Adams* v. *Olin* (140 N. Y. 150, at p. 160), Judge GRAY, writing for the court, laid down the rule that a payment will not be regarded as an admission of an old debt unless it is the " deliberate act of the debtor, evidencing, or accompanied by some evidence of, an intention to thereby acknowledge to his creditor the existence of the greater indebtedness."  In *Crow* v. *Gleason* (141 N. Y. 489, at p. 493) Judge EARL had this to say: " In order to make a money payment a part payment within the statute, the burden is upon the creditor to show that it was a payment of a portion of the admitted debt, and that it was paid to and accepted by him as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder."

The 1937 payment did not toll the statute.  Rights under the old claims, if there ever were any, accordingly, are barred by the statute, and claimant is limited to debts claimed for the six years next preceding deceased's death.  This period goes back only to 1933.  For this period, moreover, the claim, as filed, gives credit for board in the full amount on the theory that seven dollars and fifty cents per week was deducted from deceased's weekly drawing as partner in the firm of V. Pappalau's Sons.  Accordingly, no board charges are claimed for the six-year period beyond those already received and credited.  These credits were, of course, current payments, and it is not even argued that they tolled the statute.  Claimant's claim as to board should, therefore, be dismissed in its entirety.

As to the forty dollars for hospital charges advanced and payment on a loan made to the Personal Finance Company, the Statute of Limitations does not apply.  Nor is the proof clear on this point. The money was never requested by deceased, was not paid directly to him, and the record does not show that it ever accrued to his benefit.  There was merely testimony by claimant himself that it was *intended* for the benefit of deceased.  This is insufficient, and this portion of the claim must be denied on this ground.

The decree of the surrogate should be affirmed, with costs.

FOSTER, J., concurs; BLISS, J., concurs in a separate memorandum; HILL, P. J., dissents in an opinion, in which CRAPSER, J., concurs.

BLISS, J. (concurring). I vote to affirm both for the reasons stated by Judge SCHENCK and also for the following additional reasons:

Claimant and decedent were brothers, each of whom owned an undivided interest in the homestead property of their late father, and they and their families lived together in this homestead. Each paid some portion of the expenses of operating the household. Decedent and his son both worked along with claimant in the same partnership business. It was a mutually agreeable arrangement which continued over a long period of time. There was no contract or agreement between claimant and decedent with respect to the payment of board, nor is there any proof as to the value of such board. There is wholly lacking that clear and convincing proof which should be present to entitle this claimant to recover. We may not presume that there was an agreement under these circumstances. Indeed, the presumption, if any, is to the contrary.

As to the account book of the claimant, there is no proof in this record that the entries were made in the regular course of business and that it was the regular course of such business to make such records at the times of the entries therein. Appellant contends, however, that the entries were competent as some sort of an admission by decedent against his own interest. Claimant's wife testified that the decedent and her husband looked at the book. Even if we credit this testimony as being true (which I do not in view of this witness' obvious interest and desire to color her testimony), a failure on the part of the decedent to protest did not constitute an admission of the correctness of the book entries. There was no duty on his part to protest. The wife's testimony apparently referred only to the entries of payments. There is no proof as to when the entries of charges for board were made. But even if the book were properly admissible in evidence it would weaken rather than strengthen the claimant's case. The first impression from an examination of these entries is that they were all made at the same time. They are so regular and uniform and identical in all respects that the entries themselves contradict the thought that they were made at different times. Thus their exclusion from evidence, even if erroneous, did not prejudice the claimant's case.

This proof gives one the impression that this claim was an afterthought and that the claimant and his wife collaborated in its preparation. The surrogate quite correctly rejected it.

HILL, P. J. (dissenting). The claim of Harry Pappalau, the appellant, against the estate of his deceased brother, William, was dismissed upon the ground of failure to establish it, as the surrogate stated, by " that clarity of proof required for the maintenance and allowance of claims advanced after the death of decedent." Appellant and decedent were sons of Valentine Pappalau, Sr., who established an ice business near Albany, and who died in 1919, leaving his homestead and house to the two children mentioned and their brothers, Valentine, Jr., and Edward. These four conducted the business until Valentine, Jr., died in 1931, and thereafter it was conducted by the survivors. After the death of the father, the homestead was occupied by the decedent, his son, Henry, twelve years of age, appellant and his wife and her sister. The rejected claim is for board of William and his son, Henry, for nine years, beginning May 1, 1919, aggregating $4,680 (ten dollars a week), upon which there was credited $2,250, leaving a claimed balance of $2,430. It is not disputed that decedent and his infant son boarded with appellant's family; the only contribution which William made toward the food or other expenses of maintaining the household was the purchase of the milk for " a few years." According to the testimony of the wife of appellant, it was agreed that this should be done in addition to paying ten dollars a week. After May 1, 1928, it is unquestioned that seven dollars and fifty cents a week was deducted from decedent's drawing account in the Pappalau ice business, and a like sum from the wages paid the son Harry, the fifteen dollars being turned over to the claimant as a payment for board. This continued, so far as decedent was concerned, until his death and until the son Harry ceased to be employed in 1934. Five witnesses testified to admissions by decedent that there was an unpaid balance for board of himself and his son prior to May 1, 1928. Of these, two were not members of the Pappalau family. One, Charles Smith, who has worked for appellant since 1925, the other, Homer Carhart, who was in appellant's employ until December, 1934. There was no evidence gainsaying the debt.

Appellant asserts error for the exclusion on the trial of an account book which shows charges of $520 each year from 1920 to 1928, both inclusive, for board of decedent and his son, with credits of $2,250. The testimony of claimant's wife that it was a record of transactions made in the regular course of the business between decedent and claimant, the entries being made by claimant at the time of the several transactions, brings the book within the provisions of the Civil Practice Act (§ 374-a). *Johnson* v. *Lutz* (253 N. Y. 124) gives the history of the common-law rules as to admis-

sions in evidence of books and accounts prior to and after *Vosburgh* v. *Thayer* (12 Johns. 461, decided in 1815) to the enactment of section 374-a of the Civil Practice Act. The purpose of the Legislature in enacting the section " was to permit a writing or record, made in the regular course of business, to be received in evidence without the necessity of calling as witnesses all of the persons who had any part in making it, provided the record was made as a part of the duty of the person making it, or on information imparted by persons who were under a duty to impart such information."

In *Matter of Roge* v. *Valentine* (280 N. Y. 268) it is stated: " The common-law rule has been changed to some extent by section 374-a of the Civil Practice Act." In sustaining the exclusion of entries made upon check stubs and cards the opinion further states, " It does not sufficiently appear in this case that the notations on the record cards and check stubs were made in the regular course of business and at the time of the transaction noted or within a reasonable time thereafter." The wife of the claimant testified to the making of the entries in this book in the regular course of business and at the time of the transaction recorded. The admissibility of the entries should not be confounded with the weight which the trier of the facts is required to give them. The section says, " all other circumstances of the making of such writing or record, * * * may be shown to affect its weight, but they shall not affect its admissibility." It was error to exclude the entries. (*Harrison* v. *N. Y. Central R. R. Co.*, 255 App. Div. 183; *Littmann* v. *Goldstein*, Id. 540.) This is more impressive because the conclusion reached by the surrogate was at variance with the testimony of five witnesses, and justified only in his memorandum by the recital that claims of this kind should be established by clear and convincing proof.

The decree should be reversed on the law and facts and a new trial granted.

CRAPSER, J., concurs.

Decree of the surrogate affirmed, with costs.